**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Defabian C. SHANNON, Defendant–Appellant.**

No. 95–2367.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 3, 1996.

Decided Sept. 3, 1996.

Reargued En Banc Dec. 18, 1996.

Decided April 1, 1997.

Rehearing Denied May 23, 1997.

Mel S. Johnson (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Mark S. Rosen, Michael Holzman (argued), Rosen & Holzman, Waukesha, WI, for Defendant–Appellant.

Before POSNER, Chief Judge, and CUMMINGS, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, KANNE, ROVNER, WOOD, and EVANS, Circuit Judges.

POSNER, Chief Judge.

The defendant, Defabian Shannon, pleaded guilty in 1995 to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He was sentenced to 115 months in prison, and challenges the sentence on several grounds. The panel before which his appeal was argued found merit in only one of his challenges, 94 F.3d 1065 (7th Cir.1996), and we reject the others on the basis of the panel's opinion. By a vote of 2 to 1, the panel held that the district judge had erred in enhancing the defendant's base offense level because of a previous conviction for sexual assault, which the judge classified as a crime of violence. We decided to rehear the case en banc in order to consider the important question of the circumstances in

which a sexual offense against a minor not involving the use of force is nevertheless a crime of violence within the meaning of the sentencing guidelines.

The normal base offense level for the crime of being a felon in possession of a firearm is 14, but if the defendant has a "prior felony conviction of ... a crime of violence," the base offense level rises to 20. See U.S.S.G. §§ 2K2.1(a)(4)(A), (6). The guidelines define a crime of violence as a state or federal offense punishable by imprisonment for more than a year that either "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1).

In 1992 Shannon had been charged with second-degree sexual assault of a child, a felony under Wisconsin law committed by anyone who "has sexual contact or sexual intercourse with a person who has not attained the age of 16." Wis.Stat. § 948.02(2). The criminal complaint alleged facts that if believed showed that Shannon had committed a forcible rape. But the information filed against him omitted all these facts except the name and the date of birth of the girl and that he had indeed had sexual intercourse (not mere "sexual contact") with her. Shannon was permitted to plead guilty to the information, which means that he admitted only the facts contained in it—intercourse with a girl who we know from the date of birth in the information was 13 years 10 months old at the time of the act. Shannon was 17 years 10 months old when the crime was committed and 19 when he was sentenced to three years in prison for the offense. The maximum sentence for second-degree sexual assault in Wisconsin is 10 years.

█ Forcible rape is of course a crime of violence, so that if we were permitted to peek behind the information and credit the allegations in the complaint we could affirm the sentence without difficulty. But this course is not open to us. There has never been a judicial finding that the sexual act that Shan-non perpetrated upon the 13 year old was forcible rape. The use of force is not an element of second-degree sexual assault, so no finding on the question was necessary for conviction. Nor was there a finding of forcible rape when Shannon was sentenced for sexual assault—on the contrary, the judge said at the sentencing hearing that "you haven't pled to a crime here that requires ... use of force or anything like that." In his federal criminal proceeding Shannon has vigorously contested the allegation of forcible rape and has offered to present evidence that it is false. An evidentiary hearing would be necessary to determine the nature of the rape.

The district judge refused to hold such a hearing. He considered himself bound by the principle, recognized in most circuits including our own, that the characterization of a previous conviction offered to enhance the defendant's federal sentence is to be based on the facts charged in the indictment (or, as here, the information), without a deeper inquiry into the circumstances of the offense. E.g., *United States v. Lee*, 22 F.3d 736 (7th Cir.1994); *United States v. Palmer*, 68 F.3d 52 (2d Cir.1995). We are not disposed to abandon this principle, which is contained in the guideline commentary itself, U.S.S.G. § 4B1.2(1), Application Note 2, and which is necessary to avoid greatly complicating sentencing hearings with little offsetting gain. We have deviated from this principle only when it was otherwise impossible to determine the proper classification of the offense under the sentencing guidelines and—a critical condition not satisfied here—the deviation did not require a hearing to resolve contested factual issues. *United States v. Sebero*, 45 F.3d 1075, 1078 (7th Cir.1995); see also *United States v. Spell*, 44 F.3d 936, 939 (11th Cir.1995); *United States v. Smith*, 10 F.3d 724, 733–34 (10th Cir.1993).

It is true that an evidentiary hearing on a defendant's previous conduct is often a part of the sentencing process under the guidelines. We need look no further than the present case; the district judge further increased the sentence after a hearing in which he found that Shannon had committed a murder for which he had not been charged. But in dealing with uncharged conduct there is no

charging document on which the judge can rely; an evidentiary hearing is unavoidable. Allowing the parties to go behind a charging document could result in an evidentiary hearing in most federal sentencing proceedings—not merely in those in which previous uncharged conduct is brought in to enhance the sentence—because most federal criminal defendants have a criminal record and consideration of that record is a mandatory part of sentencing under the guidelines.

*Current* uncharged conduct, it is true, is typically rather than just occasionally involved in federal sentencing, because the charge is typically limited to a subset of the defendant's criminal conduct that gave rise to the charge—for example, an ounce of cocaine when he's actually sold a kilo. See U.S.S.G. § 1B1.3 (relevant conduct). But criminal *history* deals with old, not current, conduct. If the district judge were required to go behind the charging document to determine the defendant's criminal history, the evidentiary burden of exploring the circumstances of old crimes would potentially be borne in every case in which the defendant *had* a criminal history. It would be a heavy burden not only because of the frequency with which it would have to be borne but also because of the unusual evidentiary difficulties and uncertainties involved in exploring criminal conduct that may have occurred many years ago and in jurisdictions remote from that of the current sentencing. It is not surprising that the guidelines direct the judge, in computing a defendant's criminal history, to give primary attention to his previous *convictions.* See U.S.S.G. § 4A1.1.

Of course, just as with the uncharged murder, the judge could have based an upward departure on the uncharged forcible rape. U.S.S.G. § 4A1.3(e); *United States v. Ruffin,* 997 F.2d 343 (7th Cir.1993). But upward departures are exceptional; enhancement on the basis of the defendant's criminal history is automatic. (And under section 4A1.1(f), a prior sentence for a crime of violence is one of the grounds for a mandatory enhancement.) Limiting judicial inquiry in the computation of the defendant's criminal history to the formal charging document thus saves the district judge considerable time in the majority of cases.

The criminal complaint that touched off the sexual-assault proceeding against Shannon might be thought a charging document. The critical difference between it and the information, however, is that the information was the basis of the conviction and sentence and all its allegations were admitted and must be deemed established, while the complaint contains factual allegations that are contested and would require an evidentiary hearing to confirm. We are told that in some states the criminal complaint may be the only charging document. When that is so, the judge might have to determine disputed facts alleged in it, although probably the better alternative, by analogy to the doctrine of collateral estoppel, would be for the judge to consider only the minimum facts required to support the conviction—the facts that *must* have been found (or admitted) in the earlier proceeding.

Confined as we are to the information, we must decide whether sexual intercourse, not shown or conceded to be forcible, with a 13 year old is a crime of violence within the meaning of the guidelines, an issue of federal law even though the crime is one defined by state law. *United States v. Phipps,* 68 F.3d 159, 161 (7th Cir.1995). The government argues that *any* felonious sexual act with a minor should be deemed either to involve force, because the minor is incapable of giving legally recognized consent, or to involve conduct that presents a serious risk of physical injury. (A "risk" is by definition probable not certain, hence potential rather than actual; "potential risk" appears to be a redundancy in the guideline.) An inference of violence from mere unconsented-to physical contact, the government's first reason for arguing that every felonious sexual act with a minor is per se a crime of violence, would not wash in this circuit. It would transform any unconsented-to touching that the law has made a felony into a crime of violence, including picking a person's pocket, a crime that we have held is not a crime of violence, *United States v. Lee, supra,* 22 F.3d at 740–41; *Lowe v. United States,* 923 F.2d 528, 530 (7th Cir.1991); see also *United States v.*

*Mathis,* 963 F.2d 399, 406–10 (D.C.Cir.1992), though some courts disagree with us on this. E.g., *United States v. Mobley,* 40 F.3d 688, 696 (4th Cir.1994); *United States v. McVicar,* 907 F.2d 1 (1st Cir.1990).

As for ruling that any felonious sexual act with a minor creates a "serious potential risk of physical injury," this suggestion was undermined at oral argument when the government's lawyer conceded that the goals behind laws forbidding sex with minors are various and need not include the goal of protecting the minor from a serious risk of physical injury. This concession implies, correctly in our view, that these laws must be considered one by one to see whether the conduct punished by the particular law under which the defendant was convicted involves a serious risk of physical injury. In some states, such as Illinois, it is a felony to have sex with a person under the age of 18 (under 17 if there are no aggravating factors, such as a substantial discrepancy in ages). 720 ILCS 5/12–15, 5/12–16. Yet persons can marry in Illinois at the age of 16 with parental approval. 750 ILCS 5/203. It is unlikely therefore that the age of consent in the Illinois statute was chosen with the purpose in mind of protecting minors from the physical consequences of sex. We cannot be certain about this because the requirement of surrogate consent by the minor's parents might be thought adequate to protect those teenagers for whom sex might be physically injurious whether because of medical conditions or sheer immaturity that would make pregnancy at once unlikely to be averted by contraception and physically hazardous to mother or fetus. But the point is only that a concern with physical injury cannot be read off automatically from a statute punishing sex with minors.

Another reason for this conclusion is the wide variance in the age above which sex with a minor is not made felonious in the absence of any aggravating factors. In Iowa, for example, the minor need only have reached the age of 14, Iowa Stat. § 702.5, and in Pennsylvania she need only have turned 13. Pa.CSA 18 § 3121(6). The U.S. population is biologically homogeneous; if sex does not create a serious risk of physical injury to a 13 year old in Pennsylvania, it does not create a serious such risk to a 13 year old in Illinois. The states with very low ages of consent are in a distinct minority. They may simply be wrong in their assessment of the risks; they may be less averse to risk than other states; they may be less child-protective; or they may consider felony statutes an inapt instrument for regulating teenage sex. No inference can be drawn that these states consider sex with a 13 year old or a 14 year old to be harmless to the girl or that if they do they are right. Our point is only, once again, that a serious risk of physical injury cannot be *automatically* inferred from the existence of a statutory-rape law. To make the answer to the question whether felonious sex with a minor is a crime of violence a mechanical function of the laws of the different states would be arbitrary because it would make distinctions unsupportable on the basis of the risk of physical injury, that risk being a constant across states and the only relevant criterion (once the use of force is set to one side) in the guideline; would undermine the guidelines' goal of bringing about a reasonable uniformity in federal sentencing; and would treat "crime of violence" as a question of state rather than federal law.

Some cases from other circuits might be read as taking the approach suggested by the government and thus deeming any felonious sex act with a minor a per se crime of violence. Most of them can be distinguished, however, as involving a prepubescent child, incest, or other aggravating factors and in none, so far as appears from the court's factual recitation, was the minor at the top of the relevant age range with no aggravating factor present. See *United States v. Velazquez–Overa,* 100 F.3d 418, 422 (5th Cir. 1996); *United States v. Taylor,* 98 F.3d 768, 774 (3d Cir.1996); *United States v. Bauer,* 990 F.2d 373 (8th Cir.1993) (per curiam); *United States v. Rodriguez,* 979 F.2d 138 (8th Cir.1992); *United States v. Wood,* 52 F.3d 272 (9th Cir.1995); *United States v. Reyes–Castro,* 13 F.3d 377 (10th Cir.1993); *United States v. Passi,* 62 F.3d 1278, 1282 (10th Cir.1995); *Ramsey v. INS,* 55 F.3d 580 (11th Cir.1995) (per curiam).

A modification of the government's suggested approach would be for the sentencing judge to decide whether the particular state's statutory-rape law that the defendant had violated was based on a concern with the risk of physical injury and if it was to classify any violation of that law as a crime of violence. Wisconsin has made 16 the age below which sexual activity with a minor is felonious. The likelihood of physical injury as a consequence of sex is greater with a 15 year old than with a 17 year old. The younger child is likely to have poorer judgment, less knowledge about sex, and less money, all of which deficits will make it less likely that she will use or insist that her partner use effective measures to prevent pregnancy and disease. She is also less likely to be a responsible expectant mother, so there is danger to her fetus. These are grounds for thinking that the Wisconsin statute may be concerned with risk of serious injury after all, but against this it can be argued that the fixing of a lower age of consent than 16 by a number of states is evidence that the danger to a 15 year old of physical injury from sex is not great. Wisconsin's second-degree sexual-assault statute, moreover, is not limited to sexual intercourse; it includes sexual contact, which can be as noninvasive as fondling a breast or buttock through clothing for the purpose of arousing the fondler sexually. Wis.Stat. § 948.01(5)(a). Such contact might disturb a young person, but it would be highly unlikely to cause physical injury. From the fact that the statute seems to equate mere sexual contact to sexual intercourse it could be argued that the animating concern is not with physical injury incident to sex.

A further complication, so far as characterizing the purpose behind a particular state's statutory-rape law is concerned, lies in the origins of these laws. Their original purpose was to protect the virginity of female minors in order, in turn, to protect their marriageability, viewed as a girl's or a woman's most precious asset and one gravely impaired by loss of virginity. Comment, "Adolescents in Jeopardy: An Analysis of Texas' Promiscuity Defense for Sexual Assault," 29 *Houston L.Rev.* 583, 586–87 (1992); Michelle Oberman, "Turning Girls Into Women: Re-evaluating Modern Statutory Rape Law," 5 *J.Crim.L. & Criminology* 15, 26 (1994). Only recently has the focus of governmental concern with teenage sex shifted to the protection of young girls from pregnancy, sexually transmitted diseases, possible psychological harms incident to early commencement of sexual activity, and possible adverse social and economic consequences of teenage pregnancy and births out of wedlock. The extraordinary variety of state statutory-rape laws and the well-known failure of state legislatures to keep their sex laws up to date with the changing sexual mores of the American people make it difficult to impute a single goal to statutory-rape laws, let alone a goal centering on the risk of physical injury.

To decide this case, however, we need not characterize the goals or grounds of the Wisconsin statute or for that matter of any other specific law punishing sex with minors. All that the crime of violence guideline requires is that the defendant's offense "involves" a serious potential risk of physical injury, *United States v. Wood, supra,* 52 F.3d at 276, not that that risk be the concern that animates the statute creating the offense. And it is common ground between the parties that in deciding just what the defendant's offense was we are free to look at the facts charged in the indictment or information; we are not confined to the minimum conduct that would create the offense. (The issue discussed earlier was whether we can go deeper into the facts, not whether we can go that far.) Those facts are that the defendant had sexual intercourse, not just sexual contact, with a 13 year old, not a 15 year old. The Wisconsin statute covers a lot of ground, and some of it may not be crime of violence ground. But sexual intercourse with a 13 year old is in our view a crime of violence within the meaning of the guidelines, because it does present a serious risk of physical injury. A 13 year old is unlikely to have a full appreciation of the disease and fertility risks of intercourse, an accurate knowledge of contraceptive and disease-preventive measures, and the maturity to make a rational comparison of the costs and benefits of premarital intercourse. See, e.g., Mark A. Schuster et al., "Communication Between Adolescents and Physicians About Sexual Be-

havior and Risk Prevention," 150 *Archives of Pediatrics & Adolescent Medicine* 906 (1996); Linda A. Webster, Stuart A. Berman & Joel R. Greenspan, "Surveillance for Gonorrhea and Primary and Secondary Syphilis Among Adolescents, United States—1981–1991," 42 *Morbidity & Mortality Wkly.Rep.* No. SS–3, p. 1 (Aug. 13, 1993). Furthermore, a very young girl who becomes pregnant is quite likely not to take good care of herself and her fetus, and so the pregnancy will be more dangerous to both than if she were older. For this reason and possibly for biological reasons as well, the pregnancy of a 13 year old is considered a high-risk pregnancy—and the risk is a risk of physical injury to the mother as well as to the fetus or baby. See, e.g., Alison M. Fraser, John E. Brocker & R.H. Ward, "Association of Young Maternal Age With Adverse Reproductive Outcome," 332 *N.Eng.J.Med.* 1113 (1995); Nelson W. Davidson & Marianne E. Felice, "Adolescent Pregnancy," in *Comprehensive Adolescent Health Care* 1026, 1035–36 (Stanford B. Friedman, Martin Fisher & S. Kenneth Schonberg eds. 1992).

The medical complications of pregnancy are plainly a form of physical injury. What about the pregnancy itself? Pregnancy resulting from rape is routinely considered a form of grave bodily injury. E.g., *United States v. Yankton*, 986 F.2d 1225, 1230 (8th Cir.1993); *Fenelon v. State*, 629 So.2d 955, 956 (Fla.App.1993); *People v. Sargent*, 86 Cal.App.3d 148, 150 Cal.Rptr. 113 (1978). Apart from the nontrivial discomfort of being pregnant (morning sickness, fatigue, edema, back pain, weight gain, etc.), giving birth is intensely painful; and when the pregnancy is involuntary and undesired, the discomfort and pain have no redemptive features and so stand forth as a form of genuine and serious physical injury, just as in the case of an undesired surgical procedure (a pertinent example being involuntary sterilization). Most surgical procedures cause discomfort and pain; we bear these by-products to cure or avert a greater injury or illness; when there is no greater injury or illness to avert, the by-products become pure injury. No one doubts that a person who is operated on by mistake can recover damages for the pain and suffering inflicted by the operation, which he could not do if he had consented to it.

To the extent that a 13 year old is incapable of appreciating the full risk and consequences of sexual intercourse, her ensuing pregnancy and parturition (or abortion) must be considered at least quasi-involuntary and could well be considered, therefore, a physical injury even if the pregnancy is normal. And sex with a 13 year old creates a significant risk of pregnancy. Indeed, the risk appears to have materialized here. Shannon's victim became pregnant, she believes as the result of the statutory rape, and gave birth. By the age of 19, when Shannon was sentenced for that rape, he had fathered five children, of whom a second also appears to be the product of a statutory rape. The pregnancy of a 13 year old is arguably a physical injury in itself and clearly creates a substantial risk of secondary physical injury to mother or fetus from complications of the pregnancy (there is no information in the presentence investigation report, from which the facts about Shannon's having fathered children are taken, about the health of the child of his 13 year old victim); and the guideline does not grade physical injury by gravity.

It is true that the only class of sex offenses to which the guideline commentary refers in a list of examples of crimes of violence is "forcible sex offenses." All forcible sex offenses are crimes of violence; it does not follow that no nonforcible ones are. Many states still criminalize fornication and adultery; these adult nonforcible sex offenses could not plausibly be thought crimes of violence. It does not follow that sexual intercourse with a 13 year old is not a crime of violence. The guideline itself lists burglary of a home, arson, extortion, and crimes involving the use of explosives as crimes that create a serious risk of personal injury. Arson and especially crimes involving explosives may be more dangerous to physical safety than a 13 year old's having intercourse; but burglary and extortion may be less dangerous. Most burglars take pains to avoid an encounter with the occupant of the burgled dwelling, see, e.g., *United States v. King*, 62 F.3d 891, 896 (7th Cir.1995), and

much extortion involves blackmail or trolling for bribes rather than any threat, let alone actuality, of violence—yet all extortion is classified as a "crime of violence." *United States v. DeLuca,* 17 F.3d 6, 10 (1st Cir. 1994). The examples given in the guideline thus suggest a liberal test for serious risk of personal injury (as we have held in classifying attempted burglary as a crime of violence, *United States v. Sandles,* 80 F.3d 1145, 1150 (7th Cir.1996); *United States v. Davis,* 16 F.3d 212 (7th Cir.1994)), and it is a test that intercourse with a 13 year old passes.

■ We are mindful that statutory rape is more often thought of as a "morals offense" than as a "crime of violence"; and it might well be doubted whether being guilty of a morals offense would make one a more dangerous possessor of a firearm than a person who had never committed such an offense. But neither the lay classification of statutory rape nor our opinion concerning the soundness of the penological judgment that the commission of such an offense should result in a punishment bonus for a felon in possession of a firearm is relevant to our decision. By defining crime of violence (so far as relevant here) as a crime that "involves conduct that presents a serious potential risk of physical injury to another," the Sentencing Commission made the term one of art, superseding its lay meaning. And by making classification turn entirely on the risk of physical injury, the Commission withdrew from the courts discretion to base enhancement of the punishment of a felon in possession on a judgment of the soundness, as a matter of penological theory or policy, of basing such an enhancement on a particular type of crime. Judicial sentencing discretion is not extinguished, but it is confined to the decision whether to depart upward or downward from the sentence computed in accordance with the guidelines.

Shannon's lawyer asks us to limit "crime of violence" to those sex offenses (other than rape) that involve incest or prepubescent children (pedophilia). These are crimes of peculiar horror in our society. But the only added risk of physical injury in cases of incest is the risk of deformed offspring should pregnancy ensue, and while sex with a prepubescent child involves a greater risk of physical injury to the child's sexual organs if there is penetration, it creates no pregnancy risk; and much, perhaps most, pedophilia does not involve penetration. So Shannon's suggested test is arbitrary. We need not adopt a comprehensive test. It is enough that any reasonable test would classify sexual intercourse with a 13 year old as conduct that creates a serious risk of physical injury and hence as a crime of violence within the meaning that the sentencing guidelines give the term.

From the length of this opinion and the contrary judgment of the panel majority, it should be apparent that the interpretive issue is a difficult one. We cannot be certain that we have gotten it right. The difference in punishment between level 14 and level 20 can, depending on the defendant's criminal history, be great. For example, for a defendant in Criminal History Category IV, the difference is between a sentencing range of 27 to 33 months and one of 51 to 63 months. U.S.S.G. ch. 5, pt. A (Sentencing Table). So it is important that the issue be resolved correctly. We urge the Sentencing Commission to clarify the crime of violence guideline—more particularly as our decision leaves unresolved the proper treatment of cases in which the victim of the statutory rape is above the age of 13.

AFFIRMED.

MANION, Circuit Judge, with whom KANNE, Circuit Judge, joins, concurring.

I agree with the court's conclusion that when assessing a defendant's criminal history, the sentencing court is confined to the facts set out in the charging document when defining a "crime of violence" under U.S.S.G. § 4B1.2(1). The court properly followed *United States v. Lee,* 22 F.3d 736 (7th Cir. 1994), in refusing to look at the facts other than the charges in the indictment to which Shannon pleaded guilty.

I also concur with the court's conclusion that Shannon's engaging a 13–year–old girl in sexual intercourse is a crime of violence because the act itself "presents a serious potential risk of physical injury to [her]."

That act alone presented a threat of serious physical injury, meriting the enhancement. In my view, however, the risk of physical injury referred to in the Guideline must be confined to the act of intercourse, not the possible consequences that could develop, such as pregnancy or disease. Although it is usually true that pregnancy is more dangerous for a 13–year–old than a more mature woman, that should not be relevant when applying the Guideline. The possible longer-term consequences of sexual intercourse with a 13–year–old are not the kinds of risks that even in hindsight reflect violence that justifies enhancing a sentence. Pubescent pregnancy is risky for mother and child, and abortion, while a risk to the mother, obviously portends a violent end to the unborn. Nevertheless, these consequences are too attenuated from the actual crime—the sexual act itself—to be included under the potential risk of injury. If the result of sexual contact were at issue instead of the sexual contact itself, many nonviolent crimes would be renamed "violent" under § 4B1.2(1)(ii). The Application Notes interpreting this Guideline do not show that Congress or the Sentencing Commission intended for a potentially harmful consequence of a nonviolent act to replace the nonviolent act itself, and thereby upgrade nonviolent acts into "violent" ones. Yet that would be the effect of focusing on future physical risks to the victim instead of the actual crime committed by the defendant. Other consequences aside, sexual intercourse with a 13-year-old girl by itself creates a serious potential risk of physical injury. When the act is completed, so is the risk of the personal injury of that act. We need not speculate what else could happen as a result of the encounter, because the sexual encounter itself meets the risk of injury requirement of the Guideline.

While I am willing to go along with that narrow holding, it is still subject to criticism because it is merely based upon our own judicial impulses, not upon any legislative findings or any of the usual legislative procedures used for this type of determination. In part III of his concurrence and dissent, Judge Coffey explains in great detail the importance of leaving to federal and state legislatures the role of defining crimes of violence and the age when minors are subjected to such violence through sexual intercourse. It is extremely important that the Sentencing Commission, with the approval of Congress, not judges upon our own whim or study, determine what is and what is not a "crime of violence" under the applicable Sentencing Guideline. Judges should not usurp that legislative function. Still, I am willing to concur with the court's opinion which is limited to this violation of the Wisconsin statute rather than a general declaration that Wisconsin's or any other state's statutory rape law is per se a "crime of violence" under § 4B1.2(1)(ii). I also underscore the court's request that the Sentencing Commission, with the approval of Congress, look into whether "statutory rape" or "illegal underage sex" should be added as a "crime of violence" under this Guideline.

COFFEY, Circuit Judge, concurring in part, concurring in the judgment and dissenting in part.

I concur with the en banc majority's decision that Shannon's Wisconsin conviction for sexually assaulting a thirteen year old child [1] constitutes a prior "crime of violence" for purposes of sentencing enhancement under the U.S.S.G. § 4B1.2. However, I cannot join the majority's reliance on *United States v. Lee*, 22 F.3d 736 (7th Cir.1994), in dramatically limiting the nature and role of the complaint within Wisconsin's system of criminal procedure. In *Lee*, this court mistakenly held that "the question of whether the offense for which [a] defendant was convicted ... constituted a 'crime of violence' for the purposes of U.S.S.G. §§ 2K2.1(a)(4)(A) and 4B1.2 turns on whether the conduct set forth in the information on which his conviction is based describes conduct that presented a serious potential risk of injury to another." *Id.* at 740.

---

1. The majority refers to this crime as "statutory rape," but it is more accurately referred to as second-degree sexual assault of a child, a felony which carries a maximum prison term of twenty years and a maximum fine of $10,000. Wis.Stat. Ann. §§ 948.02(2), 939.50.

The en banc majority's reliance on *Lee*, like that of the original panel majority in this case, has placed the Wisconsin criminal complaint "off bounds," thereby relegating district courts to analyzing the "crime of violence" issue as a complicated question of law, rather than a straightforward one of fact.[2] I feel compelled to point out the glaring flaws inherent in this approach, among them being the perpetuation of arbitrariness in decision-making. Consider, for example, the majority's discussion of whether Shannon's offense presented a "serious potential risk of physical harm"; as I discuss at greater length below, it completely disregards the terms of the relevant Wisconsin statute (which makes it a felony to have sexual intercourse or contact with an individual under the age of sixteen) and somehow concludes, without either medical or legal support, that the second-degree sexual assault of a child is only a "crime of violence" if the victim is thirteen years and ten months of age or younger. The majority admits that it is uncertain "that we have gotten it right" and acknowledges that its limited holding "leaves unresolved the proper treatment of cases in which the victim ... is above the age of 13." I submit that this court should abandon and cast aside the restrictive rule set forth in *Lee*, and permit sentencing judges to consider all facts contained within the basic charging documents, including both the criminal complaint and information, when determining whether a prior conviction is a "crime of violence" under the U.S.S.G. § 4B1.2. Only then may we confidently proclaim that district judges shall "get it right" when undertaking one of the most serious responsibilities entrusted to them—sentencing.

I find it necessary to point out that the issue we address today, and from which our analysis necessarily flows, is not as the majority frames it. Indeed, this court is not being asked "to consider the important question of the circumstances in which a sexual offense against a minor *not involving the use of force* is nevertheless a crime of violence within the meaning of the sentencing guidelines." To direct our efforts towards answering such a question would be to mischaracterize the facts related in the 1992 criminal complaint filed against Shannon and incorporated into his Presentence Investigation Report ("PSR"); to wit:

> [S]ometime in March, 1991, Mr. Shannon *grabbed* [his victim] (dob 4/27/77) *by the wrist* and brought her to a house located ... [in] Racine, Wisconsin. He then *dragged her down the stairs* into the basement. Then he asked her "will you fuck me." [The victim] stated no and ran to the stairs. Mr. Shannon ran up behind her, *grabbed her by the arms* and took her back into the basement. [The victim] stated the defendant threw her onto the floor. She tried to push him off but she was not strong enough. Mr. Shannon then *took her clothes off.* [The victim] was upset and crying and told him she wanted to leave. *The defendant laughed at her and eventually forced her to have intercourse.* [The victim] states when the defendant finally allowed her to get up, she put her clothes back on, went upstairs, and ran out the door. [The victim] denied having consented [to] sex with the defendant.

Thus, the criminal complaint in Shannon's sexual assault case, which formed the basis for the subsequent information filed against him, makes abundantly clear that his conduct was both forcible and violent. Even the majority concedes that "[t]he criminal complaint alleged facts that if believed showed that Shannon had committed a forcible rape." It is, therefore, beyond dispute that this is a situation in which *violent force was* employed during the course of a sexual assault of a thirteen year old child. The majority apparently believes that *Lee* not only prohibits sentencing judges from considering factual

---

**2.** The judicial efficiencies associated with making "crime of violence" determinations based on the fact-intensive complaint are illustrated by the majority's statement that, "[I]f we were permitted to *peek behind the information* and credit the allegations in the complaint we could affirm the sentence *without difficulty*." (emphasis added).

allegations contained within the criminal complaint, but also allows us to ignore the dark reality of the violent crime alleged within that charging document. I subscribe to neither interpretation of *Lee*, and shall articulate the issue in this case as whether a defendant's second-degree sexual assault of a child constitutes a "crime of violence" within the meaning of the U.S.S.G. § 4B1.2, where the criminal complaint filed against him or her clearly demonstrates that force was employed to commit the offense, but the subsequently-filed information, *which by mandate of state law is not as factually detailed as the complaint, fails to evidence such use of force.* It is from this point of inquiry that we must proceed.

## I. The Unique Nature and Role of the Complaint in Wisconsin Criminal Procedure

While I am confident that the rule set forth in *Lee* lacks support in the U.S.S.G. and is also inconsistent with circuit precedent, including this court's en banc decisions in *United States v. Hudspeth,* 42 F.3d 1015 (7th Cir.1994) (en banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995), and *United States v. Madison,* 689 F.2d 1300, 1314 (7th Cir.1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983) ("In order for a judge to be well advised of all the facts surrounding the defendant's background ... it is imperative that he be allowed to draw upon a wealth of information concerning the defendant's background, from his date of birth up to and including the moment of sentencing."), I shall initially offer some observations regarding Wisconsin criminal procedure, for it is manifest that the majority fails to understand the very nature of the charging document known as the complaint in a Wisconsin criminal proceeding.

From the outset of its decision, the en banc majority erroneously attempts to trivialize the importance of Wisconsin's criminal complaint by implying that it is somehow not in the nature of a charging document and that it only *"might be thought of as a charging document."* On the contrary, one versed in Wisconsin law realizes that the complaint is a charging document. *See e.g., State v. Baldwin,* 101 Wis.2d 441, 304 N.W.2d 742, 746 (1981) (referring to both the complaint and information as "charging documents"). As we undertake this discussion, I believe that a bit of procedural information regarding the nature and role of the criminal complaint is in order. "The complaint is a written statement of the essential facts constituting the offense *charged.* It may be made upon information or belief. It shall be made upon oath before a district attorney or judge...." Wis.Stat.Ann. § 968.01 (emphasis added). Once the complaint is filed, it may be initially challenged before a judicial officer to test whether its factual content meets the *threshold qualification of demonstrating probable cause.* Wis.Stat.Ann. § 970.03. A defendant is thereafter entitled to contest the facts set forth therein before a judge (judicial officer, independent magistrate) to determine if they are sufficient to establish a finding of probable cause. If he or she does so, the State bears the burden of establishing that the defendant, in all probability, committed the crime charged within the court's jurisdiction. Alternatively, the defendant may opt to waive his or her preliminary hearing and, in turn, admit that there exist sufficient facts therein for him or her to be bound over for a felony trial. Wis.Stat.Ann. § 970.02(4). Thus, before an information can be filed, one of two things must have occurred: the defendant must have been bound over for trial after the preliminary hearing and a judicial finding of probable cause has been made, *or* in the alternative, the defendant waived the hearing and admitted that the facts set forth in the complaint were sufficient to warrant a bindover.

Here, the majority mistakenly comes to the conclusion that "[t]here has never been a judicial finding that the sexual act that Shannon perpetrated upon the 13 year old was forcible rape." Shannon was not charged with "forcible rape," for Wisconsin does not recognize that offense, and thus it is true that no Wisconsin court has found him guilty of "forcible rape." Nor was Shannon convicted of violating § 940.225(2), a sexual as-

sault offense that requires the use of force as an element. *See* Wis.Stat. § 940.225(2)(a) ("Whoever ... [h]as sexual contact or sexual intercourse with another person by use or threat of force or violence" is guilty of second degree sexual assault). Shannon was charged with (and convicted of) the second-degree sexual assault of a child, in violation of § 948.02(2), and although force is not an element of this crime, there was most certainly a "judicial finding" at the time of the probable cause hearing that Shannon employed force and violence when he committed his sexual assault offense. If the majority had chosen to consider the Wisconsin rules of criminal procedure, it would have realized that there was, in fact, a judicial finding.[3]

As the foregoing discussion reveals, in Wisconsin, the complaint is the necessary "first step"—a prerequisite to filing the information—in any and all criminal prosecutions and forms an integral part of the court record. *See* Wis.Stat. § 970.01(2) ("When a person is arrested without a warrant and brought before a judge, a complaint shall be filed forthwith."); Wis.Stat. § 971.02(1) ("If the defendant is charged with a felony in any complaint ... no information or indictment shall be filed until the defendant has had a preliminary examination."); *State ex rel. Cholka v. Johnson*, 292 N.W.2d 835, 96 Wis.2d 704 (Purpose of preliminary examination is to determine whether there exists probable cause as to the charge contained within complaint). The criminal complaint might well be thought of as part of the information, for there is no such thing as a freestanding, *sui generis* information in the state of Wisconsin. Without a complaint, no information can be filed. Thus, just as a human body cannot live without a heart, and just as one cannot have a chicken without first having an egg, the information cannot exist without a criminal complaint. Because it serves not only to charge the defendant with the crime, but also to establish probable cause that the crime was committed, the complaint, by its very nature, is required to be much more factually detailed than the information. The complaint, in order that it might meet the probable cause test before a judicial officer, must answer questions of *who* was charged with *what*, *when* and *where* the alleged offense or offenses took place, *why* the *particular person* was being charged, and how reliable was the complainant or informant, *State v. Townsend*, 318 N.W.2d 361, 107 Wis.2d 24, 26 (1982), whereas an information need contain only the defendant's name, the location and date of the offense for which he or she is being charged, as well as a citation to the statutory section alleged to have been violated, all of which are set forth for the benefit of the defendant as well as the court.[4] The overriding purpose of an information under Wisconsin law "is to inform a defendant of the charges against him so he can prepare a defense; notice is the key factor." *State v. Nye*, 100 Wis.2d 398, 302 N.W.2d 83, 87 (Wis.App.1981). "The law in Wisconsin is well settled that when an information contains a citation to the statutory section alleged to have been violated, that reference necessarily carries with it all of the elements of the offense charged under that section." *Id.* In a second-degree sexual assault case, therefore, when the information charges a particular defendant with a violation of § 948.02(2), committed at a certain

---

**3.** That is, either a preliminary hearing took place at which a judge found probable cause as to the factual allegations set forth in the complaint filed against Shannon (including evidence that he "grabbed [his victim] ... by the wrist ... dragged her down the stairs ... threw her onto the floor ... and eventually forced her to have intercourse"), *or* Shannon waived the preliminary hearing and admitted to the complaint's factual contents. We cannot ascertain definitively, from the record transmitted on appeal, whether a preliminary hearing was conducted or whether Shannon waived his right to such a hearing. We do know that one or the other had to transpire in order for an information to be filed.

**4.** Wis.Stat. § 971.03, which effectively codifies the following form of the information in Wisconsin, illustrates the lack of factual or legal substance to such charging documents:

STATE OF WISCONSIN
.... County
In .... Court.
The State of Wisconsin
vs.
.... (Name of Defendant).
I, .... district attorney for said county, hereby inform the court that on the ... day of ...., in

time and place, the information need not recite the age of the victim, for citation to the statute only is sufficient to put the defendant on notice that he is accused of a sex crime involving a child *below the age of 16.*

In light of these requirements, which are specific to the State of Wisconsin's laws of criminal procedure, under the rule set forth in *Lee* and adopted by the majority, a federal sentencing judge would in many instances be unable to ascertain any factual detail by looking at *any* charging document—whether it be a complaint or, alternatively, an information which contains few, if any, facts—filed with a Wisconsin court to determine if a "crime of violence" is manifest. In other words, *Lee* places the criminal complaint "off bounds," and a judge could find little factual guidance in the information. As a result of this fallacious reasoning, if this decision were to apply to state prosecutions, clever defense attorneys in Wisconsin, well aware that the fact-intensive complaint is "off-bounds" at sentencing, would advise their clients to waive the reading of the complaint and waive the preliminary hearing, thus keeping out of reach of the court the facts necessary to later impose an appropriate sentence. I do not believe that the U.S.S.G. were intended to so cleverly and tightly bind the hands of the district courts. Obviously, as evidenced by Congress' enactment of 18 U.S.C. § 3661, which codifies the principle that *"[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person* convicted of an offense which a court of the United States may receive and consider *for the purpose of imposing an appropriate sentence,"* this concurring/dissenting opinion is consistent with the views of our House and Senate.

*Both* the complaint and information filed against Shannon were charging documents and *both* served to give the court jurisdiction to try him for the crime of second-degree sexual assault of a child. As referred to

the year 19 ..., at said county the defendant did (state the crime) .... contrary to section .... of the statutes.
    Dated ..., 19 ...,
        .... District Attorney
Wis.Stat. § 971.03.

earlier, by mandate of Wisconsin statute, the information was less factually detailed than the complaint, for probable cause had been established before a judicial officer and Shannon was bound over for trial (or, alternatively, Shannon had waived the preliminary hearing before a judicial officer and thus admitted to the facts of the complaint). When Shannon pleaded guilty on the basis of the information, he was pleading to the same specific crime (second-degree sexual assault of a child) charged in the criminal complaint. The facts set forth in the complaint did not magically disappear, nor did the complaint cease to be an integral part of the record, merely because Shannon pled guilty to the "bare bones" information. But *Lee* does just that—it performs a "disappearing act" and holds the detailed complaint for naught, which resultingly unduly penalizes sentencing judges simply because certain jurisdictions, like Wisconsin, provide defendants with greater protection by requiring a probable cause hearing, based on the factual allegations contained within the complaint, before he or she may be bound over for trial.

The majority's argument and its adherence to *Lee* also overlook the way in which sexual assault offenders are typically charged and prosecuted in the State of Wisconsin. Whether or not violence actually attends the sexual assault of a child under the age of 16, the perpetrator will likely be charged pursuant to Wis.Stat. § 948.02(2),[5] thus avoiding the need for prosecutors to establish that force was used in order to obtain a conviction. For example, a twenty-year old male who has engaged in sex with a thirteen, fourteen or fifteen year old girl might very well be charged under § 948.02(2) whether he actually employed force or not. The information would be the same whether force was used or not, and would set forth only the statutory elements of the crime and the statute number. However, because the reasoning in *Lee*—now approved by the majority—

5. An individual who employs violence in the course of sexually assaulting a child may be charged pursuant to Wis.Stat. § 940.225(2) ("Second Degree Sexual Assault"), an offense which requires proof of the "use or threat of force or violence" for a conviction. This offense,

absolutely prohibits a sentencing court from going beyond the information for factual detail, it is evident that a defendant who brutally sexually assaults a young girl in Wisconsin and who is charged under § 948.02(2) could *never* have his sentence enhanced under U.S.S.G. § 4B1.2, as there would exist *no way*—based solely upon the majority's limiting reference to one of the charging documents exclusively known as the information—to find that his prior conviction was a "crime of violence." That is, assuming that the judge would know the victim's age in the first place (which, as I explain below, shall not always be the case), the factually scant information is bereft of any evidence that the defendant's actions were physically violent. In short, I cannot emphasize strongly enough that the *only* way a sentencing court can determine whether violence *actually* attended Shannon's crime is to at least review the initial and fundamental charging document, the complaint.

Along these same lines, the majority's reliance on *Lee* is wholly inconsistent with its desire to arbitrarily fix at fourteen years the age below which the second-degree sexual assault of a child constitutes a *per se* "crime of violence." Quite simply, there exist no means by which federal trial judges, when faced with only a "bare bones" information, could determine whether the victim of a second-degree sexual assault was thirteen years old or younger as of the date of the crime's commission, thereby rendering such crime one of violence under the majority's application of § 4B1.2 of the U.S.S.G. Let us assume, for example, that "John Smith" is charged pursuant to Wis.Stat. § 948.02(2) with sexually assaulting "Jane Doe," a fifteen year old child, on July 1, 1997, in Milwaukee, Wisconsin. After filing a fact-specific complaint and proceeding through a preliminary hearing at which probable cause is found, the prosecutor, "Michael Clark," drafts the information in accordance with Wis.Stat. § 971.03. It reads,

> I, Michael Clark, district attorney for Milwaukee County, hereby inform the court that on the 1st day of July, in the year 1997, at said county the defendant, John Smith, did intentionally, unlawfully and feloniously have sexual intercourse with a person, Jane Doe, who had not attained the age of sixteen years of age, contrary to section 948.02(2) of the statutes.

The defendant, Smith, is subsequently convicted of second-degree sexual assault of a child. Years later, after his release, he pleads guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district judge looks to *Lee*, as well as the majority's reasoning today, and as a result of these ill-advised decisions must limit himself or herself to a review of the information in determining whether Smith's prior conviction for second-degree sexual assault constituted a "crime of violence." But the information referred to above is devoid of any facts that would be of assistance in making that determination. The sentencing judge could attempt to rest on the majority's holding that "sexual intercourse with a 13 year old is . . . a crime of violence within the meaning of the guidelines," but recall that the prosecutor in the defendant's sexual assault case was and is only required to state in the information that the "defendant did intentionally, unlawfully and feloniously have sexual intercourse with a person *who had not attained the age of sixteen years of age.*" Thus, without gleaning the criminal complaint, the sentenc-

---

like the second-degree sexual assault of a child under § 948.02(2), is a "Class BC felony," punishable by a maximum fine of $10,000 and/or a prison term of up to twenty years. Wis.Stat.Ann. § 939.50. Charging a defendant under § 940.225(2) is frequently avoided out of concern for the mental and psychological well-being of the young child-victims. That is, when confronted with a case in which the threat of force or violence was used to sexually assault a child, Wisconsin prosecutors oft-times elect to charge the defendant under Wis.Stat. § 948.02, rather than Wis.Stat. § 940.225(2), to relieve the victim of the traumatic experience of confronting his or her aggressor in open court while testifying before a judge or jury as to the specifics of the aggressor's violent acts. For this reason, prosecutors in Wisconsin frequently charge sexual offenders with second-degree sexual assault *of a child,* under § 948.02(2), even when the facts of the case would support a charge of second-degree sexual assault involving the use of force, as set forth in § 940.225(2).

ing judge would be unable to determine whether the age of the victim was fifteen, fourteen or thirteen years of age.[6] As I stated earlier, the solution to this problem is obvious—abandon the rule set forth in *Lee* and allow sentencing judges to consider the factual allegations (including age) contained within the criminal complaint. At the *very* least, since we are dealing only with the Wisconsin statute, we ought to bring the age at which sexual intercourse with a child constitutes a "crime of violence" in comport with that statute. Only then would the sentencing judge be able to confidently address the "crime of violence" issue under *Lee*'s restrictive rule and particularize the period of confinement to the individual criminal before the court.

## II. The Rule in *Lee* Lacks Support in the Guidelines and Case Law

The rule in *Lee* not only appears misguided when scrutinized relative to Wisconsin criminal procedure, but it also lacks support in either the Guidelines or case law. Initially, the majority misconstrues the effect of U.S.S.G. § 1B1.3 on the offense for which Shannon was "formally" charged; namely, being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Under § 1B1.3, a sentencing court is not limited to considering only the offense of conviction, but may also make adjustments for "all acts ... willfully caused by the defendant ... that occurred during the commission of the offense of conviction [or] ... in preparation for that offense." U.S.S.G. § 1B1.3(a). Insofar as the crime of being a felon in possession of a firearm is both a state of character (i.e., being a felon) and an act (i.e., possessing a firearm), § 1B1.3 requires a district judge to appraise all relevant conduct stemming from the elements in the offense, regardless of whether such conduct is factually set forth within the information.

Shannon is a felon because, among other reasons, he was convicted of second-degree sexual assault of a child, defined under Wisconsin law as "sexual contact or sexual intercourse with a person who has not yet attained the age of 16." Wis.Stat. § 948.02(2). The majority's application of *Lee* conveniently ignores the fact that Shannon's charged offense was inextricably linked to, and arose out of, his prior sexual assault conviction. That is, Shannon would not be labeled a "felon," and therefore a felon in possession of a firearm, had he not sexually assaulted a minor under the age of 16 years. As such, a sentencing judge should be entitled to (as the majority describes it) "peek behind" the information, in all fairness to the defendant as well as society as a whole, and be allowed to consider the factual contents of the criminal complaint, but *Lee* does not permit this.

The majority's blind reliance on *Lee* is also evident in its assertion that "the guideline commentary itself, U.S.S.G. § 4B1.2(a), Application Note 2," recognizes "that the characterization of a previous conviction offered to enhance the defendant's federal sentence is to be based on the facts alleged in the indictment (or, as here, the information), without a deeper inquiry in to the circumstances of the offense." However, even the most careful reading of § 4B1.2(a), Application Note 2, fails to reveal the specific words the majority refers to as *"indictment"* or *"information."*[7] In fact, the commentary simply does not even make mention of the various forms of charging documents, much less distinguish among them or limit a court's inquiry under § 4B1.2 to informations and indictments only. Rather, it explains that a sentencing court may look to "the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted."

---

6. The information filed against Shannon did, in fact, include his victim's date of birth. However, this is oftentimes not the case, and the Wisconsin legislature does not require prosecutors to specify the age of sexual assault victims in an information.

7. U.S.S.G. § 4B1.2., Application Note 2, reads, in relevant part:

Other offenses are included [under the definition "crime of violence"] where ... the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives ... or, by its nature, presented a serious potential risk of physical injury to another. Under this section, the conduct of which the defendant was convicted is the focus of our inquiry.

U.S.S.G. § 4B1.2, Application Note 2. Shannon was convicted of a count (second-degree sexual assault of a child) that was set forth (i.e., "expressly charged") in *both* the complaint and information. In other words, the complaint, no less the information, served to "expressly charge" Shannon with the same crime of second-degree sexual assault of a child. Thus, when the language of the commentary is applied to Shannon's case, it is quite evident that the complaint issued against Shannon could and should have been considered by the sentencing judge in determining the nature of the sexual assault conviction. The Guidelines also make clear that *"the conduct* of which the defendant was convicted *is the focus of our inquiry."* U.S.S.G. § 4B1.2, Application Note 2. Considering, then, that the only charging document under Wisconsin law that *must* refer to a defendant's conduct is the criminal complaint, it is apparent to me that § 4B1.2 of the U.S.S.G. was drafted to allow for the differences among the various states' documents and procedural requirements in criminal cases, and does not limit a Wisconsin judge's consideration specifically to the information or indictment when imposing sentence enhancements.

The rule in *Lee* is also inconsistent with the Guidelines' provisions for upward sentencing departures based on uncharged conduct. Under § 4A1.3(e) of the U.S.S.G., trial judges "may consider imposing a sentence departing from the otherwise applicable guideline range" if there exists reliable information that a defendant engaged in "prior similar adult conduct not resulting in a criminal conviction." Here, Shannon was charged under Wis.Stat. § 948.02(2), an offense which, by its express terms, does not require proof of force for a conviction. The prosecutor *could have* filed a complaint and subsequent *information* setting forth an alleged violation of Wis.Stat. § 940.225(2), which provides that "[w]hoever ... has sexual contact or sexual intercourse with another person without consent of that person *by use or threat of force or violence"* is guilty of a felony. Although I agree with my colleagues in the majority when they state that "the judge here could have based an upward departure [under U.S.S.G. § 4A1.3(e) ] on the uncharged forcible rape," now codified as sexual assault in § 940.225(2), I fail to understand their logic in prohibiting the sentencing judge from going "behind" the information when the facts set forth in the complaint would have supported a conviction under either § 948.02(2) or § 940.225(2), but only one of those crimes was alleged in the subsequent information.[8]

In addition to lacking support in the text of the Guidelines, *Lee*'s rule is without support in case law from either the Supreme Court or this circuit. There exists no Supreme Court precedent to suggest that we should adopt the position outlined in *Lee* and perpetuated by the majority, for reasons unexplained. In *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), a decision that the majority has seen fit to circumscribe and limit, the Court did consider an issue

---

**8.** It should be noted that the complaint filed against Shannon charged him with violating both Wis.Stat. § 948.02(2) and Wis.Stat. § 940.225(1)(a) ("First degree sexual assault"), the latter of which forbids "sexual contact or sexual intercourse with another person without consent of that person and causes pregnancy or great bodily harm to that person." Had this second count not been excluded from the information filed (because of a possible plea bargain or for other reasons undisclosed in this record), how might the majority, being limited by *Lee*'s rule to looking only at the information, have resolved whether Shannon's offense was a "crime of violence?" On one hand, first-degree sexual assault as set forth in § 940.225(1)(a) felonizes any unconsented-to sexual intercourse that results in pregnancy, but the majority has today declared that the pregnancy ensuing the sexual assault of a fourteen or fifteen year old child does not render a defendant's crime one of violence. On the other hand, § 940.225(1)(a) also criminalizes unconsented-to sexual contact or intercourse that causes "great bodily harm"— conduct that will *always* be deemed "violent" under § 4B1.2 of the U.S.S.G. I am confused as to how the majority would know if a defendant who is charged with violating § 940.225(1)(a) committed a "crime of violence" when the information, which does not require such specific details, would fail to indicate whether the ground for the charge was his victim's pregnancy (being a *per se* crime of violence only if the victim is below 14 years) or "great bodily harm" to his victim (always being a *per se* crime of violence).

analogous to the one before us today: the extent to which a sentencing can look to the facts underlying previous "violent felonies" when enhancing a sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) ("ACCA"). The ACCA authorizes an enhanced prison term for a defendant who is (1) convicted of being a felon in possession of a firearm *and* (2) has "three previous convictions by any court ... for a *violent* felony or a serious drug offense, or both, committed on occasions different from one another...." 18 U.S.C. § 924(e)(1). Thus, the very intent of Congress in enacting the ACCA, like the U.S.S.G., was to impose enhanced prison terms upon violent criminals (third-time repeaters), like the defendant in this case. The Supreme Court concluded that *"generally,"* the ACCA "requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense" in applying the terms of the statute. *Taylor,* 495 U.S. at 601–03, 110 S.Ct. at 2160. It cautioned against "an approach that would require the sentencing court to engage in an *elaborate* factfinding process regarding the defendant's prior offenses." *Id.* However, the *Taylor* Court did not infer in any way that it was concerned about sentencing judges considering the initial charging document, whether it be an "indictment *or other charging paper,"* such as the criminal complaint. *Id.* (emphasis added).

This court subsequently has held in clear and unambiguous language that *Taylor should not be construed as a strict prohibition against resorting to documents that are part of the court record for sentencing purposes. See United States v. Hudspeth,* 42 F.3d 1015 (7th Cir.1994) (en banc). As noted above, before the ACCA enhancement may apply, a sentencing court must determine that a defendant, in fact, has three prior convictions for violent felonies, and that these felony offenses were committed on separate occasions. In *Hudspeth,* an en banc case decided subsequent to *Lee,* we observed that in order to apply the ACCA properly, a sentencing court must necessarily have *recourse to the entire record,* including both the complaint and indictment. We held:

*Taylor* does not preclude a sentencing court from examining the factual underpinnings of a defendant's prior convictions in order that it might properly apply the ACCA and determine if multiple offenses occurred on one or more 'occasions.' *As a practical matter, a district court must look beyond the charging papers and judgment of conviction for these documents alone rarely provide the district court with the detailed information necessary to determine whether multiple offenses occurred on one or more 'occasions.' A district court's examination of the factual basis for a defendant's prior convictions does not amount to a retrial of those crimes....* The sentencing court is not being called upon to second-guess valid state court convictions, rather, it is merely determining whether the ... [prior] convictions resulted from one occasion or more than one occasion.

*Id.* at 1018 n. 3 (citation omitted).

Clearly, then, the majority has created an unwarranted concern that "the evidentiary burden of exploring the circumstances of old crimes would potentially be borne in every case in which the defendant *had* a criminal history"; this is patently inconsistent with the experience of the trial courts, as well as with Supreme Court and circuit precedent. Moreover, in light of the fact that *Hudspeth* was decided *after Lee,* it is evident that the majority reaches out and makes an end-run around *Hudspeth,* stating in disregard of our *en banc* decision that "[w]e have deviated from [*Lee* 's] principle only when it was otherwise impossible to determine the proper classification of the offense under the sentencing guidelines *and*—a critical condition not satisfied here—the deviation did not require a hearing to resolve contested factual issues."

*Taylor* and *Hudspeth* lend strong support to the proposition that a sentencing court *may* consider the charging document known as the criminal complaint for purposes of applying the "crime of violence" sentencing enhancement under § 4B1.2. As we held in *Hudspeth,* a sentencing court may look *even "beyond the charging papers and judgment*

*of conviction" and even to the contents of police reports in order to properly apply the ACCA penalty enhancement. Id.* Quite simply, the logic of *Lee*'s rule, which confines a sentencing court's § 4B1.2 determination to a review of only "the facts charged in the relevant indictment or information," 22 F.3d at 739, is not only irreconcilable with *Taylor*, but it has unquestionably been superseded by our subsequent en banc decision in *Hudspeth*. If a federal sentencing court may look into the record (i.e., beyond the charging papers) to the contents of police reports, then I fail to understand why it cannot review the criminal complaint on file—a single document contained on as few as one or two pages. This would be a far cry from engaging in an "elaborate fact-finding process."

The majority raises an unsupported practical objection to my line of reasoning, arguing that if we permit sentencing judges to consider the facts set forth in a criminal complaint, we will impose a "heavy burden" on the district courts and "greatly complicat[e] sentencing with little offsetting gain." This conclusion, to my knowledge, does not accurately reflect the experience of trial judges. First, as evidenced by the great lengths to which the majority has gone in determining whether sexual intercourse with a thirteen year old constitutes a "crime of violence," removing the complaint from a district judge's consideration actually places a greater burden upon the particular judge than if such complaint were otherwise made available. In other words, *Lee* requires sentencing judges to approach the nature (i.e., a "crime of violence" versus a "non-violent crime") of every felony committed in Wisconsin as a question of law, rather than fact,

under U.S.S.G. § 4B1.2. The time and effort expended in making such a determination on a crime-by-crime basis unquestionably eclipses that which is associated with a simple glance at fact-intensive criminal complaint.[9]

I find equally unconvincing the majority's argument that the so-called "burden" associated with conducting an evidentiary hearing would be increased "in most federal sentencing proceedings" if *Lee* were abandoned. Sentencing courts may (and routinely do) hold evidentiary hearings to determine whether contested matter in the PSR is "reliable" before factoring such information into the sentencing decision. See, e.g., *United States v. Nowicki*, 870 F.2d 405, 407 (7th Cir.1989) ("trial judge is permitted to consider a variety of factors, including . . . reliable evidence of wrongdoing for which the defendant has not been charged or convicted."); *United States v. Mustread*, 42 F.3d 1097, 1101 (7th Cir.1994) (judge entitled to rely upon PSR unless it is shown to be inaccurate). Caselaw is replete with acknowledgments that a PSR may and should contain "any information which would be helpful in imposing a sentence," *Madison*, 689 F.2d at 1314, including reliable hearsay information, evidence of juvenile crimes committed by the defendant and evidence of past criminal charged that were dismissed. *Taylor*, 72 F.3d at 543; *Nowicki*, 870 F.2d at 407. The sentencing judge may consider all information unless, upon proper objection, the judge rules that the information set forth in the PSR is somehow inaccurate or unreliable. *Taylor*, 72 F.3d at 533; *United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir.1992). The majority seems to have forgotten that in the very case before us, the record speaks

---

**9.** I think it is especially convincing in this regard that the majority has encountered little burden in periodically looking beyond the information filed against Shannon. For example, in one breath, the majority explains that "the information filed against him omitted all . . . facts except the name and date of birth of the girl that he had indeed had sexual intercourse (not mere 'sexual contact') with her." Shortly thereafter, however, my colleagues go on to state that "Shannon was 17 years 10 months old when the crime was committed." From what source did the majority draw this quotation? Certainly not the information, which simply set forth that Shannon:

Intentionally, unlawfully, and feloniously had sexual intercourse with a person who had not attained the age of Sixteen (16) years to wit: [victim's name], d/o/b: 4/27/77 contrary to the form of Statute Sec 948.01(2) in such case made and provided against the peace and dignity of the State of Wisconsin.

Even the quickest reading of the one-sentence information reveals that Shannon's age is found nowhere therein, but the majority has expended little effort to go beyond its meager factual contents in determining Shannon's age as of the date of the crime's commission.

for itself that the court did conduct such a hearing to assist in determining whether or not the defendant (as described in the PSR) had murdered Randi Majors in 1991. Shannon had not even been formally charged (much less convicted of), either through a complaint or information, with a homicide in connection with Majors' death, yet the district judge properly conducted a hearing on the murder and imposed an enhancement after finding by a preponderance of the evidence that Shannon had, in fact, participated in that fatal assault. It is inconceivable to me how the burden of conducting an evidentiary proceeding on prior uncharged conduct (the 1991 murder), for which no preliminary hearing has ever taken place, is actually greater than that which would attend a hearing on prior charged conduct—conduct that had previously been subject to a judge's thorough scrutiny at a preliminary hearing and for which probable cause was found.

Even were we to assume that an evidentiary hearing would be necessary to confirm the veracity of the sexual assault facts set forth in the two-page criminal complaint (and incorporated into the PSR), this would only have involved but a minimal expenditure of time and effort. Indeed, the district judge would have undertaken such an inquiry had he not been constrained by *Lee*. But I emphasize that there was no necessity for such a hearing before the district judge, much less any *requirement* that the trial judge conduct an evidentiary hearing. A criminal defendant who is being sentenced in a federal court is not automatically *entitled* to an evidentiary hearing on contested factual issues; rather, the determination whether to admit any evidence in a formal hearing lies within the discretion of the trial judge. Fed. R.Crim.P. 32(c)(1) (with respect to relevant factual issues at sentencing, "the court *may*, in its *discretion* permit the parties to introduce testimony or other evidence"). As we

explained in *United States v. Cantero*, the district court must "provide a procedure—*but not necessarily an evidentiary hearing*—in which the parties may argue contested sentencing issues." 995 F.2d 1407, 1412 (7th Cir.1993) (holding that judge's review of parties' written submissions was sufficient to assist him in resolving disputed factual matter). We emphasized in *Cantero* that *"[a]n evidentiary hearing need not be afforded on demand because there is no 'right' to a hearing." Id.*

The sentencing judge in this case concluded, on the basis of *Lee*, that the allegations in the criminal complaint were "off bounds" and thus he did not conduct an evidentiary hearing as to those facts. However, were it not for the unnecessary limitations imposed by *Lee*, the sentencing judge could have entertained a request for a hearing and, in the exercise of his discretion, it would have been perfectly proper for him to *deny* such a request. The factual allegations set forth in the criminal complaint had *previously* been tested at a preliminary hearing under the probable cause standard of proof (or, alternatively, admitted by the defendant through his waiver of the preliminary hearing). It is "well-settled" that the similar "preponderance of the evidence" standard of proof applies in the federal sentencing context. *United States v. Bailey,* 97 F.3d 982, 985 (7th Cir.1996); *see also United States v. Porter,* 23 F.3d 1274, 1277 (7th Cir.1994); *United States v. Masters,* 978 F.2d 281, 286 (7th Cir.1992), *cert. denied,* 508 U.S. 906, 113 S.Ct. 2333, 124 L.Ed.2d 245 (1993). In light of the comparable standards of proof that apply at both a preliminary hearing in Wisconsin (probable cause) and in the federal sentencing context (preponderance of the evidence),[10] it is difficult to see the necessity of inquiring—a second time—into the factual allegations set forth in the complaint. Certainly, it would not be an abuse of discretion, under *Cantero*, for the district judge under

10. Proof "by a preponderance of the evidence" requires a showing that some event or fact is "more likely than not," i.e., probable or likely rather than just possible. *United States v. Saulter,* 60 F.3d 270, 280 (7th Cir.1995). Similarly, in order to establish probable cause at a prelimi-

nary hearing, there must be a "reasonable *probability* [i.e., likelihood] that a crime has been committed and that the defendant committed it [on a given date and in a specified locality]." *State v. Williams,* 104 Wis.2d 15, 310 N.W.2d 601 (1981).

these circumstances to deny an evidentiary hearing.

I agree with Judge Evans that our goal should be "enlightened sentencing proceedings based on factually accurate information." This would allow sentencing judges to consider a broad mix of information in determining whether a crime was a "crime of violence." In rejecting the comprehensive approach and procedure advocated by myself and by Judge Evans, the majority decision flies in the face of and casts aside a plethora of ruling case law not only from this circuit but across the country. Whether a sentencing judge chooses to rely on the criminal complaint on file or whether he chooses, in the exercise of discretion, to conduct an independent evidentiary hearing, our case law and that of the Supreme Court is clear that "[w]hen sentencing a defendant, a judge may appropriately conduct an inquiry *broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.*" (quotations omitted). *Taylor,* 72 F.3d at 543; *see also Madison,* 689 F.2d at 1314; *United States v. Watts,* —— U.S. ——, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) ("[S]entencing courts have broad discretion to consider various kinds of information."); *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) ("[S]entencing courts have traditionally and constitutionally considered a defendant's *past criminal behavior, even if no conviction resulted from that behavior.*"); *Coonce,* 961 F.2d at 1275 ("[A] sentencing judge can and should consider a defendant's *entire* history in order that he might make an informed decision as to the proper punishment."). We have long recognized the crucial role of this extensive judicial investigation in guaranteeing that the sentencing process itself is both fair and just, not simply for the sake of the convicted criminal, but for society's benefit as well. In *Madison,* this court explained:

> The sentencing stage of the trial is one of the most important parts of the criminal process. *In order for a judge to be well advised of all of the facts surrounding the defendant's background, and particularly in view of the judge's obligation to the general public, as well as to the defen-*

*dant, to be fair, reasonable and just, it is imperative that he be allowed to draw upon a wealth of information concerning the defendant's background, from his date of birth up to and including the moment of sentencing.* While it is important to the defendant for the judge to know whether the defendant suffered as a battered child from abusive and/or alcoholic parents which could have contributed to his psychological pattern which oft-times manifests itself in violent criminal activity, likewise *it is equally important for the presiding judge to know of all of the defendant's prior criminal contacts with law enforcement agencies.* We are not only concerned with the individual's rights but also with the right of the general public to live free. . . .

689 F.2d at 1314. It is readily apparent that *Lee*'s restrictive rule, which limits a judge's "crime of violence" inquiry to the information or indictment only, flies directly in the face of the very principles detailed in *Madison* and its companion cases as well as the recent en banc *Hudspeth* decision of this court.

And, third, what better gain might a district judge bestow upon the sentencing process itself than to foster a uniform application of the U.S.S.G. Under *Lee,* there is no assurance that a particular district judge will impose similar, if not the same, sentences against two different criminals with similar records who are being punished for the same crime; whereas a judge may have a factually detailed information before him or her in one instance, such may not be the case in another (i.e., where the crime is prosecuted under the Wisconsin rules of criminal procedure). Once again, *Lee* requires that trial judges engage in an ill-advised "guessing game" and operate in a vacuum when determining, as a matter of law, whether a given sexual assault amounted to a "crime of violence." Even the majority, after exhaustive discussion, concedes that it is not certain whether it has *"gotten it right"* today. I do not believe that the sentencing of criminals should be reduced to a game of chance by precluding district judges from considering the criminal's specific conduct in the commission of the very crime that triggers the application

of the repeat-offender provisions of the ACCA and the Guidelines, or that the uniformity to which the U.S.S.G. subscribes is conducive to guess-work.

Finally, I wish to note that *Lee,* in addition to complicating such cases as this one, would prove completely unworkable in certain other instances. If sentencing judges are bound by what the majority and *Lee* deem as magic documentary labels "information" or "indictment," then crimes from the states of Connecticut (2d Cir.) (Conn.Gen.Stat.Ann. § 54–46 (1994)); [11] Hawaii (9th Cir.) (Haw.R.Penal Proc. 7); [12] and Kansas (10th Cir.) (Kan.Stat. Ann. § 22–2905 (1995)) [13] can *never* be considered and counted as criminal convictions, for those jurisdictions' criminal proceedings rely on the very same charging document throughout, known as the "complaint." In other words, the charging document relied upon throughout the entire criminal proceeding is a complaint, and a complaint only, it is neither an information nor an indictment. In my view, this state of affairs also argues most convincingly for placing the legal document referred to as a complaint on equal footing with the indictment and/or information. The majority, on the other hand, opines, albeit in dicta, that "the better alternative ... would be for the judge to consider only the minimum facts [contained within the complaint] required to support the conviction—the facts that *must* have been found (or admitted) in the earlier proceeding." This approach, which I find to be a desperate attempt at reconciling *Lee* with commonsense and the practical application of criminal procedure, will only create additional problems for sentencing judges. Identifying the so-called "minimum facts" of a case, much less

quantifying them, is by no means a facile undertaking. This task is further complicated when the State obtains a conviction for a crime that possesses multiple disjunctive elements. As previously noted, Wis.Stat. § 940.225(1)(a) felonizes "sexual contact or sexual intercourse with another person without consent of that person and causes pregnancy *or* great bodily harm to that person." Without knowing the jury's basis for conviction, would a "minimum fact" under such a statute be one which demonstrated that the defendant's unconsented-to sexual intercourse resulted in pregnancy to his victim, or one showing that such behavior brought about "great bodily harm," or both? Furthermore, the majority's reasoning compels sentencing judges to ignore findings of fact *made at trial* if such facts were not required to support the defendant's conviction.

I am convinced that *Lee*—which provides the very foundation for the majority's reasoning—is *doubly* erroneous. Not only does *Lee* unnecessarily and improperly restrict a federal sentencing judge's "crime of violence" inquiry (as discussed), the opinion also incorrectly holds that the Wisconsin crime of "theft from the person" is not a violent offense. Although the facts set forth in *Lee* established that the defendant and two accomplices "*grabbed both [of the victim's] arms and forcibly held them behind her back, while ripping her coat and removing her coin purse,*" the panel majority somehow concluded that this crime was not a "crime of violence" because: (1) it "is neither an offense that has as an element the use or attempted or *threatened* use of physical force nor is it one of the offenses specifically listed

---

**11.** In Connecticut, "[f]or all crime charged by the state on or after May 26, 1983, the prosecution may be by complaint or information." Conn.Gen.Stat.Ann. § 54–46 (1994).

**12.** Pursuant to Rule 7 of the Hawaii Rules of Criminal Procedure:

A felony may be prosecuted by a complaint under any of the following three conditions:

(1) if with respect to that felony the district judge has found probable cause at a preliminary hearing and has committed the defendant to answer in the circuit court pursuant to Rule 5(c) of these rules;

(2) if, pursuant to Rule 5(c)(2) of these rules, the defendant has waived in open court his right to a preliminary hearing; or

(3) if, pursuant to Rule 7(c) of these rules, the defendant has waived in open court his right to an indictment.

Haw.R.Penal Proc. 7(b).

**13.** Kan.Stat.Ann. § 22–2905 (1995), provides, in relevant part:

When a defendant is bound over to a district judge for trial, the prosecuting attorney shall file an information in the office of the clerk of the district court, charging the crime for which the defendant was bound over. *If the complaint is in proper form ... it may be used as the information.*

in the U.S.S.G. § 4B1.2 application note 2," and (2) the claim that [theft from the person] "pose[s] a substantial risk of injury is ... *little more than conjecture and ... speculation.*" *Lee,* 22 F.3d at 740–41. First, the Guidelines are clear that an offense is a "crime of violence" if it *"involves conduct that presents a serious potential risk of physical injury to another,"* regardless of the crime's formal elements or whether it is listed as a crime of violence in the Guidelines. U.S.S.G. § 4B1.2(1)(ii). Initially, we must be cognizant of the fact that *"theft from the person"* is an included crime in that of robbery in the State of Wisconsin, *see, e.g.,* *Moore v. State,* 55 Wis.2d 1, 197 N.W.2d 820 (1972), and that *"robbery"* is expressly referred to as a "crime of violence" in the commentary accompanying § 4B1.2. The inherently violent nature of the crime of "theft from the person" is obvious, not just from its designation as an included offense of robbery, but also from the stark reality that the perpetrator more often than not resorts to violence to achieve his objective. The *Lee* majority attempted to downplay the seriousness of the crime set forth in that record, mistakenly likening it to pickpocketing.[14] However, the Wisconsin legislature, based upon convincing information, has determined that *"theft from the person"* is a *felony* offense punishable by as much as *five years imprisonment* and a *$10,000 fine.* In order to achieve their desired result, the panel ignored the facts in this record, which clearly established that the defendant *Lee* engaged in a forcible and violent purse-snatching. Furthermore, they disingenuously cited to a portion of the Guidelines which lists "pick-pocketing [and] *non-forcible* purse-snatching, such as theft of a purse from a shopping cart" as illustrations of "theft from the person of another." U.S.S.G. § 2B1.1, comment. (n. 7). *But non-violent (as opposed to "violent") thefts are the exception rather than the rule,* and Wisconsin prosecutors often charge pick-pocketers and purse-snatchers with "theft from the person" even when, as is often the case, violence or the threat of violence attended their crime. *Lee* itself is a classic example of such a case, and thus perfectly illustrates the folly of leaving the sentencing judge in the dark by limiting his inquiry only to the "bare bones" criminal charge set forth in the information. According to the records of the Milwaukee County District Attorney's Office, in fact, in a most recent nine-month period between January and September 1996, there were some thirty arrests and convictions for *"theft from the person"* within the City of Milwaukee, and the vast majority of these (twenty-five) involved the use of force to take something of value from the victim against his or her will (e.g., forcibly snatching a purse from an elderly female victim and throwing her to the ground). Many of these incidents involved the victim being thrown to the ground, or other forms of physical violence and assault such as pushing, choking, and fracturing the extremities of the victim. Only a handful of the assaults (three) were classified as falling within a "grey area" where threats or menacing glances and body language, rather than actual force, were employed to take and remove property from the victim without consent (such as a child's bicycle).[15] This type of crime, I also submit, is fraught with the potential for physical violence and does not deserve the label of "pick-pocketing" (which can frequently be treated as a misdemeanor, depending upon the value of the property). The statistics recited above demonstrate that sentencing judges would be in a far better position to render justice if the *Lee* majority had candidly recognized, not just the plainly violent facts of *Lee* itself, but also the stark reality that in most cases "theft from the person" *does* involve violence and should be considered as a crime of violence under the U.S.S.G. In light of the very nature of most "theft from the person" cases, the *Lee* panel was mistaken when it referred to the Government's claim (that such crimes are indeed

---

14. The Wisconsin legislature does not even recognize the crimes which the *Lee* majority candidly referred to as "pick-pocketing" and "purse-snatching"—they are terms of art used to describe conduct falling under the general "theft from the person" statute.

15. In the *Moore* case previously cited, for example, the defendant was charged with theft from the person after he robbed *a sixty-three year old woman* while repeatedly warning her not to "holler or scream." 197 N.W.2d at 821.

crimes of violence) as mere "speculation" or "conjecture." 22 F.3d at 741. We must recognize that the felony offense of theft from the person, by its very nature, involves a *substantial risk of physical injury* and is therefore a "crime of violence."

For the foregoing reasons, the court should set *Lee* aside (overturn) and adopt the more sensible approach taken by our sister circuits in *United States v. Spell*, 44 F.3d 936 (11th Cir.1995), and *United States v. Gacnik*, 50 F.3d 848 (10th Cir.1995). These cases do not make meaningless distinctions among the various names and/or classifications of charging documents, but instead permit the sentencing judge to be well-informed and consider all "easily produced and evaluated court documents, including the judgment of conviction, *charging papers*, plea agreement, presentence report adopted by the court, and the findings of a sentencing judge." *Spell*, 44 F.3d at 939. Such an approach would be harmonious with our decisions in *Hudspeth, Madison* and *Taylor*, as well as the many decisions of the Supreme Court and other circuits across the country, in emphasizing the need for a broad and comprehensive inquiry by sentencing judges.

### III.  "Serious Potential Risk of Physical Injury"

The majority's analysis in this case, in adhering to *Lee*'s misguided rule for reasons at best unconvincing, focuses almost exclusively on the age of the defendant's victim, and asks whether the second-degree sexual assault of a child is a "crime of violence" when the victim is thirteen years and ten months of age as opposed to a child of fourteen or fifteen. In the course of making a judicial pronouncement on this legislative question, the majority engages in a great deal of gratuitous commentary concerning Wisconsin's sexual assault of a child statute. Instead of embarking on the circuitous route employed by the majority, and expressing disapproval of state laws prohibiting sex with minors, this court should hold that a federal sentencing judge can review any and all charging documents, including the document

known in Wisconsin as the criminal complaint when dealing with the question of whether or not the sexual assault crime was a "crime of violence." That, I repeat, is the only proper way the judge can determine whether violence actually attended the commission of the crime. And this court has made abundantly clear that "the guideline is structured to require the district court to tailor the imposed sentence to the *actual* crime committed by the particular defendant. . . ." *United States v. Michalek*, 54 F.3d 325, 331 (7th Cir.1995) (emphasis added).

While I disagree with the route taken by the majority in analyzing whether the crime before us is a "crime of violence," I do concur with the majority's ultimate conclusion that Shannon's sexual assault of a thirteen year old presented a "serious potential risk of physical injury" to his victim and was thus a violent offense. The majority's opinion, as far as it goes, is a victory for common sense because children (whether they be 13, 14 or 15 years of age) are physically and emotionally immature, and thus especially vulnerable to the risk of physical harm inherent in felonious sexual activity, including but not limited to the dangers of pregnancy and sexually transmitted diseases. In my view, however, the logic of holding that the act of sexual intercourse vis-a-vis the defendant Shannon poses a serious potential risk of physical injury to a thirteen year-old also certainly extends to those situations involving child-victims the tender age of fourteen and fifteen. A child, whether 13, 14, or 15, falls within the parameters set forth in the Wisconsin statute, which, *inter alia*, serves to address the social problems concomitant and associated with teenage pregnancy and illegitimacy. In the absence of logical reasoning and/or any empirical medical support, I cannot agree with the majority's decision to restrict its holding in pronouncing that the second-degree sexual assault of a child is a crime of violence (i.e., presents a serious potential risk of physical injury) *only* in those instances where the victim of the assault is thirteen years and ten months of age or under.[16] Obviously, then, such a holding

---

**16.**  To the extent that as our judicial analysis is limited to a scrutiny of Wis.Stat. § 948.02(2),

which protects children *between the ages 13 and 16 years old*, it must be recognized that the

is at odds with the Wisconsin legislature's determination that the act of sexual intercourse or contact with *any person below the age of sixteen* is a felony. We are dealing exclusively with the *Wisconsin* statute only, and not the law of any other state or territory.[17] As I explained in my previous panel dissenting opinion, the Wisconsin legislature, after due consideration, has classified this felony as a *"sexually violent* offense," *regardless of whether the victim is 15, 14, 13 or younger.* Wis.Stat.Ann. § 980.01 et seq. (West.Supp.1995).

Initially, I observe that the majority devotes a great deal of attention to *pregnancy* as a risk of physical harm associated with teen-age sexual activity. The majority states that "sex with a 13 year old creates a *significant* risk of pregnancy," and somehow seems to believe that "the danger to a 15 year old of physical injury from sex is not great." Nowhere in the opinion does the majority explain (or provide any medical treatise or evidence to support) its theory that the risk of physical harm and/or pregnancy is less "significant" for those who are 14 or 15 years of age rather than 13 years and ten months.[18] Indeed, with respect to pregnancy, there is most certainly a risk for children in the 14–15 year old age bracket because it is very likely (though by no means certain) that young women in this age group will be physically mature and thus more able and likely to conceive offspring.

If the danger of becoming pregnant were the paramount consideration, as the majority's discussion of pregnancy suggests, then it would follow that the second-degree sexual assault of a boy (or, for that matter, a girl not yet capable of conceiving a child) could not be a "crime of violence." However, § 948.02(2) of the Wisconsin Criminal Code applies to both male and female victims, and it should be obvious that children of either sex are at risk of physical harm from this type of sexual activity, particularly when the perpetrator is older and physically larger, as is often the case. See Wis.Stat.Ann. §§ 948.02(2); 948.01(6).

Additionally, we must not overlook the omnipresent danger that force (perhaps even the threat of or use of mortal force) is more often than not used to compel the child to engage (or continue engaging in) in sexual activity. In this regard, I agree with the Tenth Circuit, which has observed that "when an older person attempts to sexually touch a child ... there is *always* a substantial risk that physical force will be used to ensure the child's compliance." *United States v. Reyes–Castro,* 13 F.3d 377, 379 (10th Cir.1993) (emphasis added). For this reason, those circuits to address the question of whether sex crimes with children are "crimes of violence" have answered in the affirmative. *Id.; United States v. Wood,* 52 F.3d 272, 275 (9th Cir.1995) ("the risk of violence is implicit in the size, age and authority position of the adult in dealing with a child"); *United States v. Bauer,* 990 F.2d 373, 375 (8th Cir.1993) ("sexual intercourse with a female child under the age of 16 ... is ... a crime of violence for enhancement purposes."); *United States v. Rodriguez,* 979

majority's confusing reasoning has only created a presumption that the sexual assault of a minor is a "crime of violence" if the victim is older than 12 and younger than 13 years 10 months (the age of Shannon's victim).

17. Although we are concerned only with the Wisconsin statute, it is worth noting that sixty-eight percent of all states have set the legal age of consent at sixteen or higher. *See* Maryanne Lyons, *Adolescents in Jeopardy: An Analysis of Texas' Promiscuity Defense for Sexual Assault,* 29 Hous.Law Rev. 583, 608 (Fall 1992). At least twenty-five states utilize a legal age of 16, four have set the legal age of consent at 17, and five others at 18. *Id.* at 28 n. 135–37.

18. The medical authorities cited by the majority to support its holding do not confine their findings (about the dangers of sex) to children 13 or younger. *See* Mark A. Schuster et al., "Communication Between Adolescents and Physicians About Sexual Behavior and Risk Prevention," 150 *Archives of Pediatrics & Adolescent Medicine* 906 (1996) (a study of adolescents in *grades 9 through 12*); Linda A. Webster et al., "Surveillance for Gonorrhea and Primary and Secondary Syphilis Among Adolescents, United States 1981–1991," 42 *Morbidity & Mortality Wkly.Rep.* No. SS–3, p. 1 (Aug. 13, 1993) ("some of the highest rates of gonorrhea ... were among 15 to 19 year olds"); Alison M. Fraser et al., "Association of Young Maternal Age With Adverse Reproductive Outcome," 332 *N.Eng.J.Med.* 1113 (1995) (teenage mothers *13 to 17 years of age* had a "significantly higher risk" of adverse reproductive outcomes).

F.2d 138 (8th Cir.1992) (crime of lascivious acts with a child is a crime of violence).[19] Even if Shannon had not employed the use of force or violence, the *risk* of serious physical injury to his child-victim would still have been present and his offense would properly be regarded as a "crime of violence" within the Guidelines definition.

Because the Wisconsin sexual assault of a child statute extends to 14 and 15 year olds as well as younger victims, my colleagues comment that it "covers a lot of ground," by which they apparently mean that it is too broad and too inclusive. The majority opinion, using the past tense, also states that "Wisconsin *had* made 16 the age below which sexual activity with a minor is felonious." I am concerned that this language might very well be argued as invalidating the terms of the Wisconsin statute, thus creating a vacuum in the interpretation of Wisconsin law where 14–15 year old victims of this crime are concerned. Therefore, I wish to point out another shortcoming in the majority opinion: namely, its failure to make clear anywhere in the decision that its application is limited exclusively to the federal Sentencing Guidelines and does not affect Wisconsin's sexual assault of a child statute. *It still remains a felony to have sexual contact or intercourse with a person [male or female] under the age of 16 in the state of Wisconsin.* Wis.Stat.Ann. § 948.02(2).

Insofar as the majority has today taken the liberty to act as a mini-legislature and has attempted to rewrite Wisconsin's sexual assault statute, I am puzzled why it fails to address anywhere in its opinion and avoids the view of the United States Congress concerning the age at which sexual contact with a child necessarily poses a "serious risk of physical injury." Had the majority ad-dressed the question, it would have been forced to acknowledge that Wisconsin's sexual assault statute, Wis.Stat. § 948.02, is actually more limited in scope than its federal counterparts. Consider, for example, 18 U.S.C.A. § 2251 ("Sexual Exploitation of Children"), which criminalizes, among other things, the employment, use, persuasion, inducement, enticement, or coercion of "any minor [person under the age of eighteen years] to engage in . . . ˙ any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." When Congress enacted § 2251 in 1978, its over-riding concerns were the physical and psychological harms attendant to child pornography and/or sexual exploitation:

> [T]he use of children in the production of sexually explicit materials, including photographs, films, videos, computer images, and other visual depictions, *is a form of sexual abuse which can result in physical or psychological harm,* or both, to the children involved . . . and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years.

Pub.L. 104–208, Div. A, Title I, § 101(a) (emphasis added).

Interestingly, Congress amended § 2255 (the statutory section defining "minor" for application in § 2251) in 1984 and *raised* from 16 years to 18 years the age below which the sexual exploitation of a child is criminal. Wisconsin's legislature currently deems sexual contact with an individual younger than 16 as being inherently harmful. Perhaps the time has come that Wisconsin, as the majority states, *"keeps [its] sex laws up to date with the changing mores of the American people"* and, like our federal government, consider increasing that threshold age to eighteen years of age.

**19.** The Fifth Circuit recently held that the Texas crime of "indecency with a child by sexual contact," Tex.Penal Code Ann. § 21.11(a)(1), was a "crime of violence" for purposes of 18 U.S.C. § 16(b). *United States v. Velazquez–Overa,* 100 F.3d 418 (5th Cir.1996). In language similar to that of § 4B1.2, section 16(b) defines "crime of violence" as any felony offense that "by its nature, involves a substantial risk that physical force . . . may be used. . . ." The court in *Velazquez–Overa* reasoned that sexually molesting children was a "crime of violence," explaining:

> We think it obvious that such crimes typically occur in close quarters, and are generally perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive power of adult authority figures. A child has very little, if any, resources to deter the use of physical force by an adult intent on touching the child. In such circumstances, there is a significant risk that physical force may be used to perpetrate the crime.
> Id.

Congress has also legislatively protected children under 18 from the *threat* of physical violence in the form of sexual abuse. That is, 42 U.S.C.A. § 13041 requires "every facility operated by the Federal Government ... that hires individuals involved with the provision to *children under the age of 18* of child care services" to conduct background checks on potential employees. Under this federal statute, "[a]ny conviction for a sex crime,[20] an offense involving a child victim, or a drug felony may be ground for denying employment or dismissal...." The statute further provides that "[c]onviction of a crime other than a sex crime may be considered if it bears on an individual's fitness to have responsibility *for the safety and well-being of children.*" 42 U.S.C.A. § 13041(c) (emphasis added). Would the foregoing provisions—18 U.S.C.A. § 2251 and 42 U.S.C.A. § 13041— not then powerfully suggest that our federal government believes that sexual contact with minors is *per se* physically and psychologically harmful to each and every child under the age of 18 years? Is it not clear that the provisions of the Wisconsin statute are, in fact, well *within* the age parameters established by Congress for when sexual contact with a child constitutes a crime of violence? I submit that both questions must be answered affirmatively, and as such, find no basis in the majority's conclusion that the sexual assault of a thirteen year old is a crime of violence, whereas the same crime committed against a fourteen or fifteen year old somehow is not.

The majority's critique of the Wisconsin law does not end with its charge that the statute is too broad. My colleagues go on to question whether the *"animating concern"* of the statute is the *"physical injury incident to sex."* I entertain no such doubt. Protecting children (under 16) from the risk of *physical* as well as psychological injury is obviously one of the reasons that Wisconsin properly forbids sexual contact or intercourse with such persons.[21] The majority

believes that because some states have a lower age of consent than Wisconsin, it follows that "[n]o inference can be drawn that these states consider sex with a 13 year old ... to be harmless to the girl or that if they do they are right" and that "the danger to a 15 year old of physical injury from sex is not great." I fail to understand (much less accept) this logic. In stark contrast to the preceding statement, the majority has concluded that a presumption *can* be drawn that states which criminalize sex with 13 year olds are correct in believing it is *per se* harmful to a female child-victim.

My colleagues' apparent belief that sexual activity does not pose a danger for children fourteen and fifteen years of age is in sharp contrast to the reasoning of a majority of the 535 Members of the United States Congress, who have determined (following hearings and debate) that all children *below the age of 18* must be protected from sexual exploitation, which is inherently both physically and psychologically harmful. It seems that the majority is seeking the lowest common denominator in a "race to the bottom," i.e., a search for the state or territory with the *lowest* age of consent for sexual relations, whose cut-off age may then be used as a yardstick for determining when the risk of physical injury from sex is present. Perhaps the majority likewise believes that because some states have a speed limit of 70 miles per hour (while others have adopted a maximum speed of 55 mph), driving at the more excessive speed of 70 is necessarily just as safe. Is the majority holding that it is proper to err on the side of the most permissive standard (13 years rather than 16 years) that we can possibly find, instead of accepting Wisconsin's more reasonable determination (shared by sixty-eight percent of the states, see n. 17, *supra*) that it is a crime to have sexual intercourse or contact with a child below the age of sixteen?

The majority argues that "a concern for physical injury cannot be read off automatically from a statute punishing sex with mi-

**20.** "Sex crime" is not defined in the statute, nor is the term limited to violent sex offenses.

**21.** The crime is described as a sexual *assault,* a term connoting physical violence. Prior to 1987, when the Wisconsin legislature created a special chapter in its criminal code dealing with crimes against children (Chapter 948), the offense of

sexually assaulting a child was to be found in Chapter 940, entitled "Crimes Against Life and Bodily Security," which is further evidence that in the eyes of the Wisconsin legislature, which acts for and on behalf of its citizens, the crime involves *physical* harm, or a grave risk thereof.

nors," and in support of this proposition it not only discusses jurisdictions with *lower* ages of consent than Wisconsin (as mentioned previously), but it also points to states such as Illinois, which have a higher age of consent (18). While the age of consent in Illinois is 18, one may marry in Illinois at the age of 16 with parental permission. Because Illinois permits persons in the 16–18 age bracket to marry with parental consent, the majority claims that "it is unlikely therefore that the age of consent in the Illinois statute was chosen with the purpose in mind of protecting minors from the physical consequences of sex."[22] While it makes little, if any, sense for a state to grant parents the authority to allow their children to engage in an otherwise felonious sexual act, I submit that the majority of young people in the 16–18 age category are neither physically nor emotionally prepared for the various responsibilities and challenges of the marital contract. I am confident that it is for this very reason that Illinois requires parental consent before a young person may enter into what will be their most important contract in life: marriage. However, even if I were to agree that the majority's analysis of Illinois law is proper and persons in the 16–18 age group are not at risk of the physical and psychological harms from sex, I fail to see how this is relevant to the *Wisconsin* statute under consideration here, which forbids sex with 13, 14, and 15 year olds.[23]

Wisconsin's general rule that "... the contract of a minor [one who has not attained the age of 21], other than for necessaries, is either void or voidable at his option," *Kiefer v. Fred Howe Motors, Inc.*, 39 Wis.2d 20, 23,

158 N.W.2d 288 (Wis.1968), is based upon the long-standing principle that "*the minor [is] immature in both mind and experience* and ... should be protected from his own bad judgments...." *Id.* at 24, 158 N.W.2d 288. The Wisconsin legislature's recognition that children, many times even those *beyond* sixteen years of age, lack the ability to cope with the physical and emotional consequences of their actions, particularly in the context of sexual conduct, is evident in its enactment of Wis.Stat. § 48.375, which requires minors under 18 years old to obtain parental consent before obtaining an abortion. Aside from the obvious moral issues implicating one's decision to terminate the life of an unborn child, Wis.Stat. § 48.375 explains that "[i]mmature minors lack the ability to make fully informed choices that take into account ... both immediate and long-range consequences" and that "[t]he medical, emotional and psychological consequences of abortion and of childbirth are serious and can be lasting, particularly when the patient is immature." Similarly, I have noted in dissenting from a previous decision of this court that "minor unemancipated children lack the knowledge, experience, and judgment to make mature, informed, well-reasoned decisions." *Zbaraz v. Hartigan*, 763 F.2d 1532, 1548–49 n. 6 (7th Cir.1985) (Coffey, J., dissenting). Thus, as a general rule, they are unable to enter into valid contracts, or to consent to the performance of medical and surgical procedures. *Id.* With respect to the procedure of abortion, the "[t]he dilemma and confusion that is instantly thrust upon a fragile, young female in her decision to bear a child may result in psychological, psychiatric, and moral scars that, all too frequently, never heal. Added to this mental strain and anguish is a consideration of the almost endless variety of *physi-*

---

**22.** The majority explains that "as for ruling that any felonious sexual act with a minor creates a 'serious potential risk of physical injury,' this suggestion was undermined at oral argument when the government's lawyer conceded that the goals behind laws forbidding sex with minors are various and need not include the goal of protecting the minor from a serious risk of physical injury." I do not find such to be the case. Although the government's lawyer did reply to the en banc panel's questioning that the Illinois legislature "might be" concerned with protecting seventeen year olds from the psychological harms of sexual intercourse, he made clear that "our experience would lead us to believe that the legislatures are concerned about all kinds of

damage—psychological, physical and social—in terms of the various consequences that can follow from acts of intercourse with minors."

**23.** While there is arguably an inconsistency between Illinois' age of consent and the age at which it permits marriage (with parental consent), there is no such inconsistency in the State of Wisconsin. Under Wisconsin law, a person may contract to marry, with parental permission, if he or she is "between the age of 16 and 18 years." Wis.Stat.Ann. § 765.02. This provision is fully consistent with § 948.02(2), which makes it a crime to have sexual intercourse or contact with a person who has not attained the age of 16.

*cal risks* in having an abortion." *Id.* at 1549–50 (emphasis added). These same physical, psychological and moral risks are present at the moment the sexual act (i.e., sexual assault) resulting in pregnancy takes place. The majority even concedes such when it explains that "pregnancy and parturition (or abortion) must be considered at least quasi-involuntary and could well be considered, therefore, a physical injury even if the pregnancy is normal." Notwithstanding this statement, the majority jumps to the conclusion that the various risks of sexual activity are somehow only present for a child thirteen years and ten months of age or younger but *not* for those children in their fourth or fifth year of the very trying early teenaged years, whom Wisconsin has also seen fit to include within the parameters of its well-intentioned laws protecting teenagers.

In arguing that a concern for physical safety somehow does not lie behind the enactment of the Wisconsin statute, the majority also notes that the Wisconsin law applies to sexual *contact* as well as sexual intercourse. According to the majority, sexual contact such as fondling, though it may be "disturb[ing]" to a child, is "highly unlikely to cause physical injury." Therefore, according to the majority, we may not conclude that the legislature's "animating concern" was with physical injury. I agree that the majority's example of "sexual contact" (i.e., fondling) is not as likely to cause a direct physical injury (as opposed to an indirect physical manifestation of psychological harm, discussed *infra*). However, sexual contact with a child (fondling) more often than not leads to the more physically injurious behavior, such as intercourse and/or pedophilia with the minor, and for this reason a "potential *risk* of serious physical injury" is present even when the initial unlawful conduct consists of "only" touching or fondling. Furthermore, even sexual contact that does not rise to the level of advanced sexual activity carries with it the risk that the child will resist and that the perpetrator will resort to force, perhaps even mortal force, to accomplish his ends if the present sexual urge becomes uncontrollable. *Reyes–Castro*, 13 F.3d at 379.

The Guidelines direct us to consider the risk of *physical* harm only, but we would be remiss if we overlooked the fact that the grave psychological harm which results from *both* sexual contact and intercourse with a child can often manifest itself in *physical* ways. Among the long-term manifestations of childhood sexual abuse are a greater incidence of depression, self-doubt, loss of trust, alcohol abuse, self-mutilation, and frequently suicidal behavior. Harlan Mark Guidry, *Childhood Sexual Abuse: Role of the Family Physician*, 51 American Family Physician No. 2 (Feb.1995). The sexual abuse of a child may also stimulate the release of certain hormones which, if persistently elevated, can have "detrimental, long-term effects on the body." *Id.* These effects can include headaches, sleep disturbances, appetite disorders, gastro-intestinal disturbances, nausea and vomiting, heart palpitations, muscle tension, fainting, fatigue, and dizziness. *Id.* There is also the danger that exposure to sex at such a young age will break down the child's resistance to engaging in sexual behavior, and lead to further age-inappropriate sexual behavior that might very well result in physical injury. Pub.L. 104–208, Div. A, Title I, § 101(a)(8). The Wisconsin statute, recognizing that all of the aforementioned risks are present, wisely forbids either sexual intercourse or sexual contact with a child.

In addition to the majority strongly suggesting that the Wisconsin statute is too broad (i.e., that it "covers a lot of ground") and claiming that the purpose behind the *statute is not to protect children against the risk of physical harm*, it criticizes the Wisconsin legislature while improperly setting forth its own personal views about this general class of legislation, characterizing "statutory rape" [sic] laws as antiquated "morals offenses." The majority chastises "state legislatures" (presumably including Wisconsin's) for *"fail[ing] to keep their sex laws up to date with the changing sexual mores of the American people."* [24] As part of its argument that the Wisconsin "statutory rape" law

---

**24.** This rather extraordinary comment assumes that (a) the "changing sexual mores of the American people" can be measured or quantified, and (b) the state legislatures have a duty to conform their laws to this vaguely defined *national* stan-

dard of sexual morality. I disagree with both propositions. However, even if I were to accept the majority's reasoning, it is readily apparent to me that Wisconsin's sexual assault of a child statute is, in fact, well within the parameters of

is *"out of date,"* the majority asserts that laws of this kind were originally enacted *"to protect the virginity of female minors in order ... to protect their marriageability."* The author of the majority cites but two law review articles for this general proposition,[25] and—notwithstanding the fact that our proper focus mandates that we consider the Wisconsin statute—fails to even mention any relevant legislative history from the thirtieth state to be admitted to the Union (1848). In fact, although the majority speculates and comments that Wisconsin's sexual assault of a child statute is *somehow a relic of the Victorian era* or earlier, this conjecture finds no support in the legislative history. More than twenty years ago Wisconsin advisedly amended its criminal code so that the crime of sexually assaulting a child would cover victims of *both* sexes (i.e., "persons" instead of just "females"). *Compare* Wis.Stat.Ann. § 948.02 (1996); Wis.Stat.Ann. § 940.225 (1975), and Wis.Stat.Ann. § 944.10 (1955).[26] Wisconsin's modern, gender-neutral statute, which serves to protect children of *both* sexes from the risk of physical harm involved in sexual activity, cannot in fairness be characterized as "out of date."

I am at a loss to understand the majority's suggestion that § 948.02(2) of the Wisconsin Criminal Code, which serves to protect children from sexual exploitation, is somehow

old-fashioned, or that the sole and predominant purpose behind this statute, when enacted, was to protect the *"virginity"* and/or *"marriageability"* of female minors. The majority claims (again without documented support) that "governmental concern with teenage sex" has "only *recently"* shifted from an *archaic desire to protect female virginity* to such concerns as "pregnancy, sexually transmitted diseases, possible psychological harms incident to early commencement of sexual activity, and possible adverse social and economic consequences of teenage pregnancy and births out of wedlock." Again I must disagree with the majority, for the concerns listed above (with the possible exception of sexually transmitted diseases), while certainly still very current, are by no means of "recent" vintage. These problems have been with us for many years, and they continue to provide a strong justification for Wisconsin's law forbidding sexual intercourse or sexual contact with a child.[27]

The majority refers to the *"possible* adverse social and economic consequences of teenage pregnancy and births out of wedlock" as one of the "recent" concerns that might justify the Wisconsin law. There is nothing speculative (i.e., "possible") about the adverse consequences flowing from teenage pregnancy and births out of wedlock, nor are these phenomena "recent." The Wisconsin law prohibiting sexual contact or intercourse

---

the national standard of sexual morality. As explained earlier, our Congress, which presumptively represents the collective views of the "American people," has declared that the sexual exploitation of *children under 18 years old* (having been increased from 16 to 18 in 1984) is *per se* physically and psychologically harmful. *See* 18 U.S.C.A. § 2251. It is inconceivable how the majority can claim that the Wisconsin statute, which criminalizes sexual contact with individuals under 16 years of age, *"covers a lot of ground"* or that this law has not changed along with the *"sexual mores of the American people"* when the national standard was raised from 16 to 18.

**25.** One of the articles cited in the majority opinion states that *"some commentators believe* that the original purpose of making statutory rape a special offense was to 'protect virtuous maidens' or to protect the marriageability of minor females."* Comment, "Adolescents in Jeopardy: An Analysis of Texas' Promiscuity Defense for Sexual Assault," 29 Hous.L.Rev. 583, 586–87 (1992). However, the author of this article was

careful to point out the dangers of making broad generalizations concerning the historical origins of such laws, and made clear that "because most states have now enacted gender-neutral statutory rape laws, the *legislative intent* behind most of these statutes apparently is the *protection of minors in general."* Id.

**26.** Before 1975, it is true that the law applied only to female victims, but this does not mean that the law was intended to protect the virginity and/or marriageability of female minors. Other, more obvious justifications for the law come to mind, such as the need to prevent teenage pregnancy and illegitimacy (discussed below).

**27.** The Wisconsin Department of Health and Family Services has maintained statistics on teenage pregnancy and births out-of-wedlock for at least the past seventeen years. In 1995 (the most recent year for which numbers are available), there were 2,731 births in Wisconsin to young women 17 or under. Not surprisingly, ninety-one percent of these births were to unmarried teenagers. *See, e.g.,* Department of

with a minor primarily protects the minor from physical, psychiatric, and medical problems, but it also serves to curb the twin evils of teenage pregnancy and illegitimacy. "Each year, 200,000 girls younger than 18 have children, many from unwanted pregnancies." Elizabeth Shogren, *Clinton Airs Plan to Curb Teen Births*, L.A. Times (Sun., Jan. 5, 1997) at A13. The current President of the United States recently described the teenage birth rate in America as "intolerably high," despite some modest improvement in recent years. *Id.* "Teenage childbearing continues to be an important social issue because studies have shown that teenage mothers are more likely to be poorly educated and more likely to face a lifetime of poverty." National Center for Health Statistics, 45 *Monthly Vital Statistics Report* No. 5 (Dec.1996). As one recent study observes:

> Both the public health impact and the societal and individual costs of adolescent pregnancy are well known. The financial costs of early adolescent childbearing are high, and the human costs to young mothers and their children are substantial. Adolescent mothers are less likely to complete their education and are more likely to have limited career and economic opportunities, to rely on welfare, and to have failed marriages and future unintended pregnancies. They also are less likely than older women to have the skills needed for parenting and have a higher incidence of pregnancy-related complications, such as hypertension, anemia, and cephalopelvic disproportion.

Alison M. Spitz, "Pregnancy, Abortion, and Birth Rates Among U.S. Adolescents 1980, 1985, 1990," 275 *JAMA* 989 (Apr. 3, 1996) (discussing adolescent girls aged 13 to 19 years).

It is universally accepted that most teenage pregnancies today occur out of wedlock. During the time period from 1970 to 1994, "the [birth] rate for *unmarried* teenagers has risen virtually without interruption." National Center for Health Statistics, 45 *Monthly Vital Statistics Report* No. 5 (Dec. 1996) (reporting that the proportion of teen-

age births to unmarried young women rose from 30% in 1970 to 76% in 1994); see also *Statistical Abstract of the United States*, Table No. 98 (116th ed. 1996). As a society, we are in the process of learning that a wide range of social ills are linked to the problem of illegitimacy. The authors of a recent study of crime in America have summarized the rather alarming statistics, and their significance, as follows:

> Now, in the mid–1990s, more than 30 percent of all births and more than 70 percent of all black births are out of wedlock. By the turn of the century, according to reliable projections, 40 percent of all American births and 80 percent of all minority births will be out of wedlock. Each night in America, four out of ten children go to sleep without fathers who live in their homes, and upward of 60 percent will spend some major part of their childhood without fathers. This is 'the most socially consequential family trend of our generation' (in the words of David Blankenhorn of the Institute for American values), and it has seismic social implications. Senator [Daniel Patrick] Moynihan warned 30 years ago that a society which allows a large number of young men to grow up without fathers in their lives asks for and almost always gets chaos. We have come to the point in America where we are asking prisons to do for many young boys what fathers used to do.

William J. Bennett et al., *Body Count: ·Moral Poverty ... And How to Win America's War Against Crime and Drugs* 196 (1996). In some urban areas, including Milwaukee County in the State of Wisconsin, illegitimacy is no longer an aberration (statistically speaking), but is closer to being the norm. See, e.g., *Single Moms Almost the Norm: Unmarried Women Have 47.7% of Milwaukee County Babies*, Wisconsin State Journal, Apr. 24, 1996, at 3D. However, in contrast to the TV character "Murphy Brown," or the pop singer "Madonna" (two individuals who have gained notoriety and received praise as successful single mothers in our modern society), most women who have children out-of-

Health and Family Services (Center for Health Statistics), "Wisconsin Births and Infant Deaths 1995" (December 1996).

wedlock are younger, poorer, and less able to provide a stable home for their child. *Id.* (reporting that almost half of single-parent families in Milwaukee County live in poverty). The profound social consequences of teenage pregnancy and illegitimacy are borne by all of society in the form of costly social welfare programs (including federal programs such as Aid to Families with Dependent Children), foster care placement, higher crime rates, and an educational system that must struggle while attempting to teach students who come from dysfunctional family backgrounds. In light of the high social and economic costs that accompany the ongoing disintegration of our most vital moral values and principles, I fail to understand how the majority can suggest that Wisconsin's sexual assault of a child statute is too broad (because it protects children 13, 14 and 15 years of age). I can only conclude, just as Justice Scalia did in a recent dissenting opinion, that my esteemed colleagues in the majority "must be living in another world." *Board of County Com'rs, Wabaunsee County v. Umbehr,* —— U.S. ——, ——, 116 S.Ct. 2361, 2373, 135 L.Ed.2d 843 (1996). Certainly the United States Congress, reflecting the views of the general population, agrees that fourteen and fifteen year old children deserve to be protected from the manifest dangers of sex, as evidenced by its passage of 18 U.S.C. § 2251 and 42 U.S.C. § 13041, discussed *supra.* The majority chastises state legislatures for allegedly "fail[ing] to keep their sex laws up to date with ... changing sexual mores." Not only is such commentary presumptuous, it is also, in my view, improper. I ask: "Who are *we* to say that *any* democratically-elected state legislature has failed to keep its laws in tune with the will of the people?" As the foregoing discussion demonstrates, the majority's portrayal of Wisconsin's law as being out of date is erroneous, for the law forbidding sex with children under the age of 16 addresses some *current* and pressing social problems. In my opinion, the law is as current as this morning's headlines about burgeoning unwed teenage pregnancy, crime, and welfare dependency. If the State of Wisconsin were to enact a statute with a lower age of consent, such a law would presumably receive the majority's blessing as being "up to date with

... changing sexual mores." However, a law of this kind would undoubtedly leave more children unprotected and only serve to aggravate those social ills that I have previously discussed.

The majority is correct that the "sexual mores" of the American people are "changing" (and not for the better, I may add), and I would add that this moral decline has eroded the American family, which is the very life, heart and bloodline of this nation. However, just because our society is becoming sexually more permissive does not mean that our citizens have forsaken the goal of protecting children from sexual exploitation and the dangers associated with sexual activity. It is true, as Chief Judge Posner recently observed, that "contemporary American popular culture" is noteworthy for its "sex-saturated vulgarity." *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 431 (7th Cir.1995). Uninhibited sexual freedom, births out-of-wedlock, drug-use, and violence are certainly emphasized (if not glorified) by the entertainment industry. But "popular culture" does not tell the whole story, for it is heavily biased in favor of the values prevalent in states like California, and in some areas along the Eastern seaboard. The entertainment industry, by and large, is based in these pockets of so-called "progressive" sexual morality, but the trendy mores of these locales bear little, if any, resemblance to the more traditional views of the majority of Americans. Average citizens (and particularly those in the Midwest) thankfully have not abandoned the basic moral precept that children must be protected from sexual exploitation, nor, as discussed before, has the United States Congress abandoned this view. We do not have to look far for examples of this commendable impulse. For instance, less than two years ago, an outpouring of public disgust and outrage forced jeans manufacturer Calvin Klein to cancel an advertising campaign that featured scantily-clad teenagers in sexually suggestive poses. Women's groups and pro-family organizations alike properly criticized the ads for sexually exploiting children, and the public agreed, prompting Calvin Klein to pull the offensive ads. *See, e.g.,* Paula Span, *Sexy Calvin Klein Ads Spark FBI Inquiry: Investigation to Determine if Child Exploita-*

*tion Laws Were Violated,* Wash. Post, Sept. 9, 1995, at A1. I think it is obvious that the same strong and laudable desire to prevent the sexual exploitation of children also explains why the elected representatives of the people of Wisconsin have chosen to retain the law making it a felony to engage in sexual contact or intercourse with a child under sixteen years old. In other words, notwithstanding the majority's ill-advised commentary, I do not find anything old-fashioned or out of date about the Wisconsin statute.

It is indisputable that the sexual assault of a child, like any offense which violates another individual's basic rights, smacks of immorality. But it is nearly just as repugnant to suggest, as the majority does today, *"that statutory rape is more often thought of as a 'morals offense' than as a 'crime of violence'*; and [that] it might well be doubted whether being guilty of a morals offense would make one a more dangerous possessor of a firearm." [28] At the very root of any sex crime, whether it be committed against a child or adult, lies *an utter indifference towards respect for another human's life.* The perpetrator knows full well, but nevertheless does not care, whether his or her helpless victim shall be forever physically and psychologically scarred, often being left to face a life riddled with depression as well as societal mistrust. Would not an individual of such repulsive and menacing character be a more dangerous possessor of a firearm than a person who had never committed a sexual assault? Very few outside the majority would respond in the negative. We cannot forget that with every right we citizens of this great country enjoy, there is a corresponding obligation to govern our actions (interpreting law) in accordance with the common good of all mankind. The majority has unfortunately chosen to disregard Wisconsin's efforts to insure that this obligation is upheld.

Even if I were to agree with the majority's critique of the Wisconsin law, I would not join in this opinion because, absent a constitutional challenge of some kind, it is improper for this court to weigh in with its own personal views of state legislation; particularly when that legislation is designed to protect the public safety and safeguard the common good of all mankind. "Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation." *Ferguson v. Skrupa,* 372 U.S. 726, 729, 83 S.Ct. 1028, 1030, 10 L.Ed.2d 93 (1963). Federal courts were created not to sit as legislative review boards, "look[ing] over the shoulder of the State Legislature with a view toward revising to [their] satisfaction every Act passed by the Legislature." *Floyd v. Thornburg,* 619 F.Supp. 756, 760 (D.C.N.C.1985). As Justice Harlan once observed, "the domain of sexual morality is pre-eminently a matter of state concern" and accordingly, a federal court "should be slow to interfere with state legislation calculated to protect that morality." *Roth v. United States,* 354 U.S. 476, 502, 77 S.Ct. 1304, 1318, 1 L.Ed.2d 1498 (1957) (Harlan, J. concurring, dissenting on other grounds). The majority appears to be uncomfortable with the fact that the crime before us is, to an extent, a "morals offense." I do not share this discomfort, for much legislation is shaped by the moral sensibilities of the citizenry, and more particularly, by its Judeo-Christian heritage. It is not our role, as a federal court, to suggest that legislation which is morally-based is somehow improper. By engaging in such commentary, the court will only encourage those who would *steadily chip away at the moral foundations upon which our nation was built,* and which have served us so well in keeping our country vibrant and strong. In the case of *Miller v. Civil City of South Bend,* 904 F.2d 1081 (7th Cir.1990), which involved the constitutionality of a state law banning nude dancing, I noted in a dissenting opinion that the *people of each state have a right "to establish, through their democratically elected representatives, the moral climate in which they choose to live and raise their children."* Id. at 1106.

**28.** Although the majority repeatedly refers to the sexual assault of a child strictly as a "morals" offense, the Wisconsin legislature has specifically devoted an entire statutory chapter to "Crimes Against Sexual *Morality,"* see Wis.Stat. §§ 944.01–.36, and Wis.Stat. § 948.02 ("Sexual Assault of a Child") *does not lie* within it. Most notably, Wisconsin deems acts of fornication (§ 944.15), adultery (§ 944.16), prostitution (§ 944.30) and pandering (§ 944.33), among others, as being "moral crimes."

In this case as in *Miller*, I am of the opinion that "[i]f at all possible, the courts should give effect to the will of the people, *even when it means upholding laws that express viewpoints that reflect a conception of the common good that may not be shared by segments of a vocal, so-called intellectual minority*." Id. As my colleague Judge Manion correctly stated in his own *Miller* dissent, "[d]etermining the wisdom, need, or propriety of laws is the role of an elected legislature, not the federal judiciary." Id. at 1135. Many social theorists and revisionists might agree with the majority that a law forbidding sexual intercourse or sexual contact with a person under the age of sixteen "covers a lot of ground" and is essentially an out-of-date "morals offense." These "new age" theorists would be better off preaching their sermon in Las Vegas, New York City, San Francisco, or in other isolated pockets of sexual permissiveness where the majority's stated sexual mores seem to be more socially acceptable. In Wisconsin, however, the people have spoken, through their duly elected representatives, and have made it clear that they wish to live in a society which punishes as felonious any acts of sexual intercourse or contact with a child under the age of sixteen. Unlike the majority, I refuse to second-guess that determination by criticizing the statute as *too broad*, or "*out of date*," or by suggesting, contrary to all logic and common-sense, that the law is not designed to protect children from the risk of physical injury.

The age at which a person is a "child" (for purposes of a law forbidding sexual intercourse or contact with a child) is a legislative and not a judicial determination. Courts, whether state or federal, are ill-equipped to legislate because they are "without the benefit of citizen input or a trained staff to search out, weigh, balance, and comprehend" complex and controversial social issues (such as the age at which sexual activity presents a "serious potential risk of physical injury" to a child). *Wangen v. Ford Motor Co.*, 97 Wis.2d 260, 324–25, 294 N.W.2d 437 (Coffey, J., dissenting). It would be "presumptuous for this court, which does not and cannot have the benefit of public hearings and constituent expression of opinion, to 'commend' *sua sponte* any specific change in [Wisconsin

law]." Id. (quotation omitted). A distinguished former president of the American Bar Association, Chesterfield Smith, once observed:

 [C]ourts are being asked today to solve problems for which they are not institutionally equipped, or at least not as well equipped as other areas of government [such as the legislature].

As far as possible, judicial forums should be reserved for doing only that which cannot be done elsewhere.

The American public perceives the courts as a jack-of-all trades available to furnish the answer to whatever may trouble them. Shall a war be prosecuted or peace made? What is life, or when does death begin? Shall racial integration be achieved by ... busing of children to far away schools? How shall prisons and mental institutions be operated? Shall nuclear power plants be built, and if so, where? ... Is affirmative action really inverse discrimination? [At what particular age does sex pose a "serious potential risk of physical injury" for a child?]

*Id.* at 325, 294 N.W.2d 437.

We should not take it upon ourselves as federal judges sitting in review of a *state* statute which passes constitutional muster to limit the application of the Wisconsin law by establishing, in particular without any input from qualified medical or psychiatric experts, psychologists, or social workers, a rule (13 and under) that is at odds with the terms of the statute (below 16). Even though the majority's decision is limited to the *federal* sentencing context and does not affect Wisconsin law, my colleagues have opted to engage in a lengthy discussion of whether the crime is a "crime of violence" *when the victim is 13 years of age*, and, while criticizing the Wisconsin statute, they have seen fit to refuse to apply their reasoning to those young children who are but 14 or 15 years of age. Applying a heavy mixture of the economic analysis now accepted in legal writing, the majority discusses such matters as a thirteen year old's inability to engage in a meaningful "cost-benefit" analysis of sexual relations (due to her lack of information, money, and so on). With due respect to my colleagues in the majority, whose commen-

tary I agree may well be very interesting, economics can offer little insight into the offense of sexually assaulting a child, for the concerns associated with this crime are primarily physical, psychological, and moral, not economic. It is not our role to engage in economic analysis (or any other kind of evaluation), for clearly the Wisconsin legislature is far more qualified than this court to determine how sexual assault should and must be defined within the state of Wisconsin, and at what age a person is (or is not) at risk of physical injury from sexual activity. While I do not agree with each and every aspect of Judge Manion's concurring opinion in this case, my colleague is certainly correct when he states that the majority decision is "subject to criticism because it is merely based upon our own judicial impulses, not upon any legislative findings or any of the usual legislative procedures used for this type of determination." By in effect attempting to redraft the Wisconsin statute, and by making its own essentially legislative pronouncements on the proper age of consent, the majority has crossed the line into the realm of law-making, which is a function properly left to the legislative branch of Government under the separation of powers doctrine embodied in our Constitution.

## IV. Conclusion

The majority decision, as well as *Lee,* cast a blemish on the outstanding record of the Seventh Circuit for rendering well-reasoned decisions based on case law and statutory authority. The majority's tentative and uncertain holding (which includes the admission that "[w]e cannot be certain that we have gotten it right"), ignores the parameters established by the Wisconsin legislature and improperly criticizes the Wisconsin statute as being *too broad, out of date, and somehow not concerned with the physical risks of sexual intercourse or contact with a child.* The majority has offered neither medical nor psychiatric support for its essentially legislative determination that this crime presents a "serious potential risk of physical injury" limited to those victims who are 13 years and ten months of age or younger. Furthermore, because the decision is (unnecessarily) limited in scope to victims thirteen years of age or younger, it creates confusion as to how sentencing judges should deal with future cases in which the victim of the sexual assault crime was 14 or 15 years of age.

The majority's problematic discussion of the Wisconsin law would not have been necessary if the court had reasoned in accordance with Supreme Court precedent and post-*Lee* case law from this circuit, including *Hudspeth,* and ruled that the sentencing judge was entitled to look to the criminal complaint as part of the broad sentencing inquiry mandated by statute and federal case law. *See, e.g.,* 18 U.S.C. § 3661; *Watts, Taylor,* and *Madison, supra.* We should hold, as we did in *Hudspeth* with respect to the proper application of the ACCA, that a sentencing judge applying § 4B1.2 of the Guidelines is not precluded from "*examining the factual underpinnings of a defendant's prior convictions,*" as revealed in the contents of *police reports, the criminal complaint, or any basic documents of record.* 42 F.3d at 1018 n. 3.

The majority's analysis is fundamentally inconsistent, and thus built upon a foundation of quicksand and mire. On the one hand, the majority would permit a sentencing judge to delve into and journey through the entire record (police reports, etc.) when conducting an evidentiary hearing before granting an upward departure based on prior *uncharged* criminal conduct (e.g., the 1991 murder of Randi Majors). I agree that this procedure was and is both proper and consistent with our case law. However, when it comes to ascertaining the nature of a prior *charged* offense, so that the very same judge can properly apply the ACCA and the Guidelines, the majority does an about-face and chooses to ignore this court's most recent *Hudspeth* decision and bar review of the very criminal complaint in the record. Although the complaint should be considered as part and parcel of the information, under Wisconsin procedure, the majority erects a kind of "Berlin Wall" around the document known as the information, and states that the sentencing judge may not "peek behind" that barrier in determining whether a prior conviction was for a crime of violence. Behind that wall, the district judge will have to sit "in the dark," unable to make a reasoned and well-informed assessment of whether the defendant's prior conviction was for a violent crime.

Although I would prefer an approach that focuses on the proper scope of the sentencing judge's inquiry (i.e., a rule permitting reliance on the facts set forth in the criminal complaint and the defendant's PSR), I concur with the judgment in this case because in my view (which is shared by the Wisconsin legislature), the sexual assault crime at issue presents a serious potential risk of physical injury, whether the victim is 13, 14 or 15 years of age.

I reiterate that today's decision is not binding on the State of Wisconsin and is limited to the application of § 4B1.2 in *federal* sentencing cases. Nevertheless, the decision's potential for creating confusion even in this limited context is considerable. Following today's majority decision, if a defendant appears before a federal court for sentencing, and has a prior Wisconsin conviction for second-degree sexual assault of a child wherein the victim was 14 or 15 years of age (as opposed to 13), the sentencing judge will be in a quandary. The judge will be barred from reviewing the *only* charging document under Wisconsin's criminal procedure that by its very nature must include specific facts surrounding the commission of the defendant's crime—the criminal complaint. *Compare State v. Townsend,* 107 Wis.2d 24, 318 N.W.2d 361 (1982) (In Wisconsin, the complaint must answer questions of who was charged with what, why the particular person was being charged, and how reliable was the complainant or information), and *State v. Nye,* 100 Wis.2d 398, 302 N.W.2d 83 (Wis. App.1981) (An information in a Wisconsin criminal proceeding need contain but a citation to the statute alleged to have been violated). At the same time, as a result of the confusion brought about by the majority decision, the sentencing judge will lack guidance from this court on how to deal with the case before him, for as the majority concedes the court has left "unresolved the proper treatment of cases in which the victim of the statutory rape [sic] is above the age of 13."

Perhaps the only lesson to be derived from today's decision is that Wisconsin prosecutors in order to forestall a plethora of baseless legal challenges, henceforth will be forced to recite and repeat each and every factual detail previously set forth in the criminal complaint when drafting the information, in order that federal sentencing judges may attempt to the best of their ability to comply with the ill-advised dictates of *Lee* and still be able to determine whether a prior felony conviction arising in Wisconsin was for a "crime of violence." This will undoubtedly create more work for the already overburdened state prosecutors and require them to abandon Wisconsin's time-honored, not to mention codified, procedure when filing the information. Wis.Stat.Ann. § 971.03. However, unless the Sentencing Commission addresses the issues raised in this appeal (and I agree with the majority that it should), I can see no other way to overcome the misguided rule in *Lee,* which the majority has unfortunately chosen to perpetuate in today's decision. For all of the foregoing reasons, I concur in part, concur in the judgment, and dissent in part.

EVANS, Circuit Judge, concurring.

I concur in the result reached by the majority, although I agree with a number of the points made by Judge Coffey in his separate opinion. Most importantly, I agree with him that we should overrule *United States v. Lee,* 22 F.3d 736 (7th Cir.1994), and give our trial judges broad authority to consider all reliable information in deciding whether a prior conviction—without regard to its name—was a "crime of violence." The goal should be enlightened sentencing proceedings based on factually accurate information. If Shannon, as alleged in the complaint, truly grabbed the young victim, dragged her down a flight of stairs to a basement, threw her to the floor and raped her, he committed a crime of violence and should be treated today in federal court as a person with a vicious past event on his record without regard to the name attached to his state conviction. District judges make factual calls every day, and they should be permitted, at a sentencing hearing, to make a yes-he-did or no-he-didn't call like the one presented in this case. The logic of a sentencing scheme that forecloses an inquiry of this sort escapes me.