UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 10, 2006
Decided June 5, 2006

**Before**

Hon. JOEL M. FLAUM, *Chief Judge*

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-2361

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States |
| *Plaintiff-Appellee*, | District Court for the |
| | Western District of Wisconsin |
| v. | |
| | No. 04-CR-165 |
| ADRIAN BELL, | |
| *Defendant-Appellant*. | John C. Shabaz, *Judge*. |

**O R D E R**

One night in October 2004, Madison, Wisconsin, police responded to a "shots-fired" call near the apartment of Adrian Bell. Four shell casings were found in a driveway, and a search warrant was obtained for Bell's apartment. Bell was present at the time of the search, along with two other people. Three firearms were found in the apartment: a pellet gun, a sawed-off BB rifle, and a Glock 9mm pistol wrapped in a T-shirt under a piece of furniture.

Bell told police he had been involved earlier that evening in an argument with a group of people in the parking lot of his building and that he had felt threatened. He said he brandished the pellet gun at the group, then took it back to his apartment, wrapped it in a T-shirt, and put it in a closet. He also admitted possessing the BB rifle. When he was told police found the Glock wrapped in the same T-shirt as the pellet gun, Bell said he thought the Glock had been brought into

the apartment by his brother Curtis, whom Bell had called to help defend him during the parking lot altercation.

Bell was charged and found guilty by a jury of being a felon in possession of two firearms, the Glock pistol and the rifle, in violation of 18 U.S.C. § 922(g)(1). Evidence presented at trial established that the shells which had been fired earlier in the driveway came from the Glock.

On appeal, Bell challenges the government's introduction of evidence about the parking lot shooting to help establish that Bell knowingly possessed the Glock. We review the district court's evidentiary rulings for abuse of discretion. United States v. Gougis, 432 F.3d 735, 742 (7th Cir. 2005).

We believe the jury could have found it relevant that the pistol discovered hidden in Bell's apartment was the same pistol that someone had fired earlier in the parking lot, where Bell acknowledged having been involved in an angry altercation. Although Bell was not charged with any wrongdoing that occurred in the parking lot, evidence of the shooting was admissible under the "intricately related" doctrine. See Gougis, 432 F.3d at 742. The police response to the shots-fired call led directly to the search of Bell's apartment, where the contraband weapon was found. Thus, it was not an abuse of discretion for the district court to hold that evidence from the parking lot shooting was "intricately related to the facts of the case" against Bell for being a felon illegally in possession of a firearm. See id.

Nor was the probative value of the parking lot evidence outweighed by its potential to prejudice the jury against Bell by giving them information that he may have been involved in an additional crime with which he was not charged. See Federal Rule of Evidence 403. "The balancing of probative value and prejudice is a highly discretionary assessment, and we accord the district court's decision great deference, only disturbing it if no reasonable person could agree with the ruling." United States v. Thomas, 321 F.3d 627, 630 (7th Cir. 2003). Informing the jury of the parking lot shooting helped to "complete the story of the crime on trial," Gougis, 432 F.3d at 742, and helped to "explain the circumstances surrounding" the later discovery of the hidden Glock, id. We do not believe that giving the jury a complete account of the evening's events necessarily would have induced them to decide the felon-in-possession charge on an improper basis, such as emotional reaction against Bell as the possible shooter, rather than on the objective evidence itself. See Thomas, 321 F.3d at 630.

Bell also argues that the district court improperly denied evidence he wanted to offer that no fingerprints were found on the Glock. Since this meant Bell's fingerprints were not on the gun, he believes the evidence "would have made it

somewhat less likely that he possessed the gun." In United States v. Paladino, 401 F.3d 471, 478 (7th Cir. 2005), we held that the absence of fingerprints is irrelevant to the issue of whether someone possessed a gun, and thus a trial court may properly exclude such evidence.

Bell contends that his situation is different than the scenario in Paladino because, while in that case the defendant admitted that the gun was in his car while he was driving it, Bell has not admitted possessing the Glock. While there could be a set of facts in some other case where that distinction is meaningful, we don't believe it's meaningful here. After all, Bell was not charged with firing the weapon, but the gun was found hidden in his apartment. Whether a person's fingerprints are found on an object, indicating that he recently handled it, is a different question than whether he is illegally in possession of it. The district court did not err in applying our holding from Paladino.

Beyond the evidentiary points, Bell lodges three challenges to his sentencing.

The district court sentenced Bell as an armed career criminal because it found he had three prior convictions for violent felonies. One of those crimes was second degree sexual assault of a child, stemming from Bell's intercourse with a 13-year-old girl. In United States v. Shannon, 110 F.3d 382 (7th Cir. 1997), we held that sexual intercourse with a 13-year-old victim is a crime of violence within the meaning of the United States Sentencing Guidelines because it presents a serious risk of physical injury. (The guidelines definition of a violent crime is interchangeable with the statutory definition of a violent felony under 18 U.S.C. § 924(e)(2)(B). See United States v. Howze, 343 F.3d 919, 924 (7th Cir. 2003).) In Shannon, we consulted medical literature to determine that intercourse with a 13-year-old presents a serious potential risk of physical injury. Bell argues that Shannon is no longer good law after Shepard v. United States, 544 U.S. 13 (2005). Shepard held that in determining whether a prior conviction qualifies as a violent felony, a court's inquiries are limited to the terms of the charging document, the plea agreement, or the transcript of the plea colloquy confirming the factual basis for the offense.

Bell misinterprets Shepard. Whether a crime is a violent felony is a question of law, not of fact. United States v. Wallace, 326 F.3d 881, 886 (7th Cir. 2003). Shepard does not disallow the use of outside evidence on the question of whether a particular crime presents a serious risk of physical injury and thus is properly classified as a matter of law as a crime of violence. Shepard's limitation on judicial fact-finding during sentencing goes to the determination of what prior crime the defendant actually committed. United States v. Lewis, 405 F.3d 511, 515 (7th Cir 2005) ("The list in Shepard is designed to identify documents that illuminate what

crime the defendant committed . . . ."). For example, the issue in Shepard turned on what evidence the trial court could consult in determining whether the defendant had committed a so-called "generic burglary" (i.e., a burglary within an enclosed space such as a building), which is classified as a violent felony, or some other form of burglary which isn't. Shepard, 544 U.S. at 16.

Next, Bell contends he was wrongly sentenced as an armed career criminal because the indictment did not recite his prior violent felony convictions and the district court engaged in improper judicial fact-finding when it determined he was subject to the enhanced penalty provisions of 18 U.S.C. § 924(e). Bell acknowledges that Almendarez-Torres v. United States, 523 U.S. 224 (1998), approved such use of noncharged prior convictions as "sentencing factor[s]," id. at 243, and thus we are prevented from giving him any relief on this point. He raises the issue only "to preserve it for possible Supreme Court review."

Finally, Bell argues that the district court should have continued his sentencing hearing in order to allow the probation officer to obtain his social security disability records. Bell believes those records would have documented that he suffers mental retardation, which might have provided mitigating evidence for sentencing or shown that he was entitled to a competency evaluation. We review the district court's decision on a request for continuance for abuse of discretion, United States v. Knorr, 942 F.2d 1217, 1221 (7th Cir. 1991).

A defendant has a due process right to a "fair sentencing procedure which includes the right to be sentenced on the basis of accurate information." Id. (quoting United States v. Rone, 743 F.2d 1169, 1171 (7th Cir.1984)). Requests for continuance are subject to "case-by-case determination . . . in light of the circumstances presented, particularly the reasons presented to the district court in support of the continuance at the time the motion is denied." Id.

While we appreciate the district judge's desire to run an efficient courtroom, there is no indication that Bell's counsel was seeking to unreasonably delay the proceedings. The evidence of Bell's retardation is potentially significant enough to his due process right to fair sentencing that a limited remand is in order allowing Bell to be resentenced after he has had the opportunity to present evidence of his disability.

For these reasons, Bell's judgment of conviction is AFFIRMED. His sentence, however, is VACATED and the case is REMANDED for a new sentencing proceeding.