**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted May 8, 2008[*]
Decided June 10, 2008

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 07-3273

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States |
| *Plaintiff-Appellee*, | District Court for the |
| | Western District of Wisconsin. |
| *v.* | |
| | No. 04-CR-165-S-01 |
| ADRIAN BELL, | |
| *Defendant-Appellant*. | John C. Shabaz, *Judge*. |

**O R D E R**

This is Adrian Bell's second visit to our court.  When he first came before us, we affirmed his conviction, entered after a one-day jury trial, on a charge of being a felon in possession of a firearm but vacated his sentence because the district court denied his

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

request for a continuance and proceeded to impose a sentence before a probation officer could obtain his social security disability records, which show that he had rather significant mental issues that he wanted to raise. *United States v. Bell*, No. 05-2361 (7th Cir. June 5, 2006).

While his case was on appeal, prison officials first diagnosed Bell with paranoid schizophrenia and petitioned the district court to transfer him to a psychiatric hospital. The district court granted this petition, and once Bell was committed to a prison hospital he began taking anti-psychotic medication to control his illness. The staff psychiatrist observed that Bell's condition stabilized following his admission to the hospital and that he could function adequately so long as he remained on his medication.

Before resentencing, Bell requested a hearing to establish his competency to proceed. That motion was granted, and consequently the hospital's staff examined and observed Bell for close to two months. In their report to the court, a psychologist and psychology intern noted that Bell's most serious psychotic symptoms were managed by his medication. During this period staff listened in on some of Bell's phone conversations and heard him tell his son's mother about the potential outcomes in his then-upcoming competency hearing. With the other inmates, Bell was jovial, spontaneous, and well-liked. But with staff it was a different story--he was withdrawn and emotionless, scoring very poorly on tests designed to measure his cognitive capacity. On one occasion, however, Bell confronted two staff members, informing them that, according to his attorney, they had provided Bell with inaccurate information about his competency hearing. Given his inconsistent behavior, the hospital staff administered a battery of tests designed to figure out if Bell was malingering and concluded that he was exaggerating the severity of both his psychiatric illness and cognitive impairment. Ultimately, the psychologist and intern both concluded that Bell was competent to proceed to sentencing.

Bell then moved for a an independent psychological examination, a request that was also granted. After meeting with Bell on three occasions, Bell's psychologist agreed that he was malingering, exaggerating both his mental illness and intellectual deficiency. As a result, the psychologist was unable to reach a conclusion regarding Bell's competency to proceed to sentencing. Bell also obtained his social security records, which revealed that in 2002 he had a full scale IQ of 52--a score consistent with mild mental retardation. But Bell's high school records show that he had previously

scored nearly twenty points higher, suggesting that Bell doesn't suffer mental retardation, but rather has a borderline intellectual deficiency.

While acknowledging that Bell has a serious mental illness and a limited mental capacity, Magistrate Judge Stephen Crocker nonetheless concluded that Bell was competent to be resentenced. The district court agreed and sentenced Bell to 285 months imprisonment, the same sentence it imposed at the first sentencing hearing. The district court considered the new evidence of Bell's schizophrenia and low IQ but regarded his "repeated attempts to undermine the process of determining his competency" to be an aggravating factor.

Bell first argues that the district court erred when it found him competent to be sentenced. Due process requires a defendant to be competent before proceeding to sentencing--in other words, a defendant must have the ability to consult with his lawyer and have a rational and factual understanding of the proceedings against him. *United States v. Moore*, 425 F.3d 1061, 1074 (7th Cir. 2005); *United States v. Collins*, 949 F.2d 921, 924 (7th Cir. 1991). A district court's determination that a defendant is competent deserves deference, and we will overturn such a finding only if the court clearly erred. *Moore*, 425 F.3d at 1074.

Bell's mental illness and low IQ raise legitimate concerns about his ability to proceed to sentencing, but the magistrate judge adequately addressed these concerns by ordering Bell to undergo a psychological evaluation, allowing Bell to get a second opinion, and carefully considering the evidence before him. A defendant's diagnosis of schizophrenia does not necessarily preclude a finding that he is competent. *See United States v. Bennett*, 908 F.2d 189, 195 (7th Cir. 1991). Most of the psychotic manifestations of Bell's schizophrenia were controlled by medication, and he remained under direct medical supervision during his resentencing. Likewise, a low IQ score alone is not enough to show that a defendant is incompetent. *Cf. United States v. Rodriguez-Leon*, 402 F.3d 17, 23-25 (1st Cir. 2005) (finding defendant with IQ of 62 competent to plead guilty). While Bell's IQ scores were low, the district court was entitled to discount their weight given that all three medical professionals--including the one he hired-- concluded that Bell was malingering with regard to his mental impairment. Critically, in unguarded moments Bell demonstrated that he understood his case. Prison staff overheard Bell lucidly talking with his family about his impending hearings, and Bell coherently recounted to hospital staff a conversation he had with his attorney. Two medical professionals deemed Bell competent to proceed to sentencing, and no doctor or psychologist disagreed. We cannot conclude that the magistrate judge clearly erred

when he depended on the unrefuted conclusions of these professionals. *Moore*, F.3d at 1067, 1075; *United States v. Robinson*, 404 F.3d 850, 857-58 (4th Cir. 2005). Nor can we conclude that the district court was wrong to accept the findings made by Judge Crocker.

Bell also argues that his within-guidelines sentence is unreasonable because the district court failed to adequately explain why it reimposed the same 285-month sentence despite the new evidence presented at resentencing of his schizophrenia and limited cognitive capacity. But the new evidence did not require the district court to impose a lower sentence on remand because, as the court explained, that evidence was a mixed bag. While Bell's low IQ and mental illness mitigated against a harsh sentence, his persistent malingering in attempts to undermine the court's competency determination suggested a heavy sentence was needed to promote Bell's respect for the law. 18 U.S.C. § 3553(a)(2)(A). The district court explicitly weighed these competing factors when reaching Bell's sentence, and in light of this analysis we cannot conclude that the 285-month sentence was inadequately explained. *Rita v. United States*, 127 S. Ct. 2456, 2468-69 (2007) (affirming sentence when record reflects that sentencing judge considered defendants argument and evidence); *United States v. Dabney*, 498 F.3d 455, 460 (7th Cir. 2007).

Accordingly, the judgment of the district court is AFFIRMED.